Charles E. ARMSTRONG, Plaintiff,

v.

George P. BAKER et al., Defendants and Third-Party Plaintiffs,

v.

BROTHERHOOD OF RAILWAY, AIR-LINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES (sometimes called BRAC), a Labor Union Affiliated with AFL–CIO, et al., Third-Party Defendants.

Civ. A. No. 73-2-W.

United States District Court, N. D. West Virginia.

May 2, 1975.

James F. Companion, U. S. Atty., Wheeling, W. Va., William Berger, U. S. Dept. of Labor, Washington, D. C., for plaintiff.

Robert H. C. Kay, Charleston, W. Va., for defendants and third-party plaintiffs.

Highshaw & Mahoney, Washington, D. C., Arch W. Riley, Wheeling, W. Va., Wm. J. Donlon, Gen. Counsel for BRAC, Rosemont, Ill., for third-party defendants.

## OPINION

MAXWELL, Chief Judge.

This is an action by Charles E. Armstrong, a former employee of Penn Central Transportation Company, to obtain restoration, with seniority, to Penn Central's employ, together with lost wages, pursuant to Section 9 of the Military Selective Service Act, as amended, 50 U.S.C. App. § 459. The defendants, Trustees of the property of Penn Central Transportation Company (referred to hereinafter as Penn Central) impleaded the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter referred to as BRAC), named officers of subordinate units of BRAC, and the officers and members of BRAC.

The parties have entered into a stipulation of facts, with exhibits, which has been filed and made a part of the record. The plaintiff has filed a motion for summary judgment, contending that the pleadings, depositions, affidavits and stipulation of facts establish the required absence of a genuine issue as to any material fact and the plaintiff's entitlement to judgment as a matter of law. Defendant-third party plaintiff Penn Central has filed a cross-motion for summary judgment, or in the alternative, a motion for summary judgment in their favor against the third-party defendant BRAC. Third-party defendant BRAC has filed an answer opposing the plaintiff's motion for summary judgment and a motion to dismiss the complaint and the third-party complaint, or, in the alternative, to grant the third-party defendant summary judgment.

The essential facts, as they appear from the entire record, including the stipulation of facts, are as follows:

The plaintiff, Charles E. Armstrong, began his employment with Penn Central as a brakeman on December 8, 1966. He was continuously employed in that capacity until on or about January 14, 1969, when he left his employment to enter the United States Army. It is stipulated that the plaintiff's job with Penn Central was other than temporary.

The plaintiff commenced his military service on January 21, 1969, and following a period of basic military training, he was assigned to duty in the Republic of South Vietnam. While serving in combat on active duty, the plaintiff sustained shrapnel wounds to his head which required enucleation (complete removal) of the left eye, a craniotomy and other medical treatment. As a result of these wounds, the plaintiff was honorably discharged from the armed forces and placed on permanent disability retirement on November 19, 1970.

On December 1, 1970, the plaintiff applied for reemployment with Penn Central. He was not offered reemployment at that time, but because of his physical condition was referred to Dr. Henry G. Ferri, M. D., a physician employed by Penn Central, for a physical examination. Dr. Ferri conducted the physical examination on February 11, 1971, and found the plaintiff unqualified to perform his preservice job as a brakeman. No position was offered to the plaintiff at that time.[1]

On August 20, 1971, the plaintiff contacted the Labor Management Services

---

1. The deposition of John Metil, Jr., Superintendent of Labor Relations, Central Region, Penn Central Transportation Company, reflects (at pp. 19 and 31–34) the deponent's contention that the plaintiff had been offered a clerical job, without seniority, on December 31, 1970. The apparent basis for this contention is a letter from the Train Master at Weirton Junction, West Virginia, on that date, requesting permission to transfer the plaintiff to a position as Clerk. (Metil deposition Exhibit No. 1.) Penn Central apparently has abandoned this contention. *See* Stipulation of Facts, paragraph 26.

Administration (LMSA), United States Department of Labor, in Pittsburgh, Pennsylvania, concerning his reemployment rights. The plaintiff filed a complaint with LMSA on October 1, 1971, and on October 13, 1971, Compliance Officer Britenbaugh of LMSA conferred separately with Robert Carothers, Supervisor of Personnel for Penn Central, and Dr. Ferri. Mr. Carothers advised that in light of the plaintiff's inability to perform the duties of a brakeman and his physical disabilities, a clerical position would be "the most equitable position as far as pay and status was concerned." Dr. Ferri confirmed his earlier determination that the plaintiff was unable to perform the duties of a brakeman, but stated his opinion that there was no medical reason why the plaintiff could not work as a clerk if he were "confined to a safe environment and away from moving equipment."

Following these conferences Compliance Officer Britenbaugh wrote a letter to R. R. Shipyor, Penn Central's Assistant Superintendent of Labor Relations, requesting a prompt decision on Penn Central's position with regard to the plaintiff's reemployment. On December 3, 1971, Mr. Metil responded to Mr. Britenbaugh's letter to Mr. Shipyor. Mr. Metil's letter expressed his concern that the placement of the plaintiff in a clerical position would violate clerical employees' seniority rights and the scope of the Clerical Rules Agreement, subjecting Penn Central to payment of an eight-hour penalty day for each day the plaintiff would be used. Mr. Metil also advised that Penn Central would further pursue the matter of finding a suitable position for the plaintiff, and requested the plaintiff to submit additional medical records.

The plaintiff, during January 1972, furnished the additional medical reports and records to Penn Central. After review of these materials, Dr. Ferri reaffirmed his earlier determination that the plaintiff "remains totally and permanently disqualified from performing any of the duties of a brakeman" and recommend that the plaintiff "be placed in a (safe environmental) job."

On March 13, 1972, Mr. Metil wrote to F. J. Kroll, General Chairman of BRAC, requesting his concurrence in the placement of the plaintiff in an existing clerical position at Weirton Junction, West Virginia. Mr. Kroll, in a letter dated March 14, 1972, indicated that his concurrence would require removal of a clerical employee then working at that location, and would also cause difficulties because other clerical employees at that location had been furloughed.

On April 7, 1972, Metil advised Compliance Officer Britenbaugh by letter that unilateral placement of the plaintiff in a clerical position at Weirton Junction, West Virginia, would violate other clerical employees' seniority rights and the scope of the Clerical Rules Agreement and would subject Penn Central to the payment of eight-hour penalty days.

Penn Central provided a listing of positions which would meet the medical restrictions imposed by Dr. Ferri, but despite continuing contacts among LMSA representatives, Penn Central and BRAC, no satisfactory resolution was reached, and after referral of the matter to the Department of Labor and the Department of Justice, this action was instituted on February 26, 1973.

The first issue which must be resolved is raised in BRAC's response to the plaintiff's motion for summary judgment and its motion to dismiss, or in the alternative for summary judgment, viz., whether this action is barred by the applicable state statute of limitations or by laches.[2]

BRAC contends vigorously that the absence of a statute of limitations in 50 U.S.C. App. § 459 dictates that the Court rely on the applicable state statute of limitations, and that the state statute

---

2. Defendant Penn Central also seeks to adopt these affirmative defenses in its motion to amend its answer and to dismiss the complaint.

of limitations applicable to this action is West Virginia Code § 55–2–12(c) (Michie 1966).[3]

The plaintiff asserts that laches, rather than a statute of limitations, governs, and that if a statute of limitations is applicable, the five-year limitation period provided for in West Virginia Code § 55–2–6 (Michie 1966),[4] rather than the one-year limitation urged by BRAC, controls.

The Court believes BRAC's reliance on Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5th Cir. 1972); Hire v. E. I. DuPont de Nemours and Company, 324 F.2d 546 (6th Cir. 1963), and Delman v. Federal Products Corporation, 251 F.2d 123 (1st Cir. 1958), is misplaced. Both *Blair* and *Hire* involved veterans' claims for back wages only, whereas the plaintiff here seeks both the legal relief of back wages and the equitable relief of reinstatement. This distinction was noted in Bell v. Aerodex, Inc., 473 F.2d 869 (5th Cir. 1973), wherein the Court, in applying the Florida one-year limitation period to a back wages claim case, stated:

"We recognize that calling this a 'wage case' might lead to a result different from that which would be reached if we termed the case a 'suit for the restoration of veterans rights,'" . . . *Id.*, at 872.

Several courts have recently questioned the applicability of state statutes of limitations to veterans' reemployment actions involving equitable relief. *See*, e. g., Muscianese v. United States Steel Corporation, 354 F.Supp. 1394 (E.D.Pa. 1973); Greathouse v. Babcock and Wilcox Company, 381 F.Supp. 156 (N.D. Ohio 1974); Davis v. Alabama Power Company, 383 F.Supp. 880 (N.D.Ala. 1974). At least one court has specifically ruled that such actions are "premised on equitable principles" and that state statutes of limitations are not applicable. Ufland v. Buffalo Courier Express, Inc., 394 F.Supp. 199 (W.D.N.Y.1974). Yet another approach was taken by the United States Court of Appeals for the Third Circuit, in Gruca v. United States Steel Corporation, 495 F.2d 1252 (3d Cir. 1974), where the Court recognized the dichotomy of the legal and equitable claims, and held that the Pennsylvania six-year statute of limitations applied to the claim for legal relief, while the doctrine of laches applied to the equitable relief sought.

In analyzing these recent decisions and applying them to the facts of this case, the Court concludes that (1) if a state statute of limitations is applica-

---

3. "§ 55–2–12. Personal actions not otherwise provided for.

"Every personal action for which no limitation is otherwise prescribed shall be brought: . . . (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."

4. "§ 55–2–6. Actions to recover on award or contract other than judgment or recognizance.

"Every action to recover money, which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: If the case be upon an indemnifying bond taken under any statute, or upon a bond of an executor, administrator or guardian, curator, committee, sheriff or deputy sheriff, clerk or deputy clerk, or any other fiduciary or public officer, within ten years; if it be upon any other contract under seal, within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years; and if it be upon any other contract, express or implied, within five years, unless it be an action by one party against his copartner for a settlement of the partnership accounts, or upon accounts concerning the trade or merchandise between merchant and merchant, their factors or servants, where the action of account would lie, in either of which cases the action may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after."

ble, it applies only to the legal relief of back wages sought by the plaintiff; (2) the provisions of 50 U.S.C. App. § 459 constitute an integral part of every individual employment contract, including that of this plaintiff; and (3) the limitation period applicable, if any, to the claim for legal relief sought herein, would be the five-year limitation period contained in West Virginia Code § 55–2–6, *supra* n. 4. Since the plaintiff's cause of action accrued on December 1, 1970, at the earliest, the legal relief sought would not be time-barred by West Virginia Code § 55–2–6 (Michie 1966).

■ The doctrine of laches governs the challenge to the timeliness of the plaintiff's claim for reinstatement, which may be equated with the equitable remedy of specific performance of a contract. Greathouse v. Babcock and Wilcox Company, *supra*, at 162. Since this action was commenced prior to the expiration of that statute of limitations which the Court has found would be applicable to the claim for legal relief, if any, the burden is on BRAC to demonstrate undue delay on the part of the plaintiff and prejudice to it. Though this action could have been instituted considerably earlier than was the case, the delay was due, in large part, to the substantial negotiations that took place and the time consumed, after negotiations failed, for transmittal of the information through the Departments of Labor and Justice to the United States Attorney for this district. The Court does not consider the delay unreasonable in this context, and even if the delay were found to be unreasonable, the Court is of opinion, recognizing the existence of substantial authority to the contrary, that such delay should not be charged to the plaintiff. Mere lapse of time is insufficient to establish prejudice, and the

record in this action fails to show any prejudice, either to BRAC or to Penn Central, resulting from the delay in institution of the action.

■ Counsel have devoted considerable time and effort to an exploration of the effect, if any, of the Vietnam Era Veterans' Readjustment Assistance Act of 1974[5] on the statute of limitations defense pleaded by BRAC. While it is not necessary, in light of the Court's determination, to discuss the contentions of the parties, the Court believes that the legislative history of this Act, particularly Report No. 93–907 of the Senate Committee on Veterans Affairs (June 10, 1974), at page 111, lends strong support to the plaintiff's argument that the provision prohibiting application of state statutes of limitations to veterans' reemployment actions reflects the original Congressional intent.

For the reasons stated herein, BRAC's motion to dismiss based on the statute of limitations and laches defenses must be denied. Penn Central's motion to amend its answer to assert those defenses, and to dismiss the complaint based on these matters, are likewise overruled.

An order having been earlier entered disposing of BRAC's motion to dismiss for lack of jurisdiction, we turn now to the merits of the pending motions for summary judgment.

The statutory provision on which this litigation is based is 50 U.S.C. App. § 459, and more particularly § 459(b)(B)(ii), which reads as follows:

"(b) Reemployment rights

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment

---

5. Title IV of the Act (P.L. 93–508), enacted on December 3, 1974, over Presidential veto, and made effective on enactment, provides, *inter alia*, for recodification of the law on reemployment of veterans into Title 38, United States Code (38 U.S.C. § 2021 et seq.). The Act provides specifically that statutes of limitations are not applicable to veterans' reemployment actions.

within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such person shall—

\* \* \* \* \* \*

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; . . ."

■ The plaintiff's former position as a brakeman, which he is indisputably physically unqualified to perform as a result of his injuries, was one which was covered by a collective bargaining agreement between Penn Central and the United Transportation Union (UTU). The clerical position which plaintiff seeks is one which is covered by a collective bargaining agreement with BRAC. Thus, the initial substantive question presented, which is apparently one of first impression, is whether the statute compels (or permits) the plaintiff to be placed in a position, with full seniority, in a craft different from his previous position, and which is covered by a collective bargaining agreement and seniority system different from that under which he was employed prior to his military service.

In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946), the Court held that the Act "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." The portion of the Act here at issue provides that the veteran who is unqualified to perform the duties of his prior position because of service-sustained disability but is qualified to perform the duties of "any other position in the employ of such employer" is to be restored to "such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances of his case . . ." (emphasis supplied).

To read into the statutory language the requirement that "such other position" must be within the same craft or collective bargaining unit as the former position, as Penn Central and BRAC urge, would require the Court to ignore the plain meaning of the statute and would be inconsistent with the object of the statute and the liberal construction which it is to be accorded.

■ The contentions of Penn Central and BRAC that the provisions of the Railway Labor Act (45 U.S.C. § 151 et seq.) and the collective bargaining agreements are controlling is unpersuasive. As Judge Boreman of this Court pointed out in Poling v. Baltimore & Ohio R. R. Co., 166 F.Supp. 710, 715 (N.D.W.Va.1958), "[t]he re-employment statutes are specific statutes for settlement of veterans' claims and prevail over the more general provisions of the Railway Labor Act." (Citation omitted.) Accord, Moe v. Eastern Air Lines, Inc., 246 F.2d 215 (5th Cir. 1957), cert. denied 357 U.S. 936, 78 S.Ct. 1380, 2 L. Ed.2d 1550 (1958), rehearing denied 358 U.S. 858, 79 S.Ct. 13, 3 L.Ed.2d 92 (1958). And the Court in Fishgold, supra, held, 328 U.S. at 285, 66 S.Ct. at 1111, ". . . no practice of employers or agreement between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." The Supreme Court further emphasized this

point in McKinney v. Missouri-Kansas-Texas R. R., 357 U.S. 265 (1958), by its statement, at 268–269, 78 S.Ct. 1222, at 1225, 2 L.Ed.2d 1305, that a veteran "sues not simply as an employee under a collective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces." The "special rights" accorded a veteran, particularly a disabled veteran, cannot be overshadowed or defeated by reference to the artificial and inflexible craft and collective bargaining units established within the railroad industry.

BRAC presents two other arguments which deserve brief attention. First, it contends that the plaintiff waived his rights under the Act by failing to request that an impartial board of doctors determine that he was unqualified to perform the duties of a brakeman pursuant to Rule 8–C–1 of the UTU collective bargaining agreement.

■ Waiver is an affirmative defense which must be asserted in the responsive pleading. Rule 8(c), F.R.Civ.P. The defense has not been raised in any of the pleadings, but, to the contrary, is raised for the first time in BRAC's Memorandum of Points and Authorities. Assuming, *arguendo*, that this defense is properly asserted, the record does not support the conclusion that there is a requirement that Rule 8–C–1 be invoked. Indeed, BRAC suggests only that it could have been invoked. Furthermore, the Court believes that even if this Rule were construed to mean that there was a requirement that it be invoked, it would be of no avail to BRAC, because, as noted earlier, the veterans reemployment statutes prevail over the provisions of the Railway Labor Act and the collective bargaining agreements in effect with the employer.

■ BRAC next contends that the record does not establish that plaintiff is qualified for a clerical position. Penn Central makes a similar allegation. As with the waiver defense just discussed,

this contention surfaced for the first time in the briefs of BRAC and Penn Central on the motions for summary judgment. Moreover, the assertion that the plaintiff's qualifications for a clerical position are in question because he was not given a typing test, in the face of the affirmative obligation placed on the employer by the statute, and in view of the fact that the plaintiff has a high school education, including typing training, is, if not frivolous, so patently lacking in merit as to warrant no further discussion.

In conclusion, based on the pleadings, stipulation of facts and exhibits thereto, affidavits and depositions, the Court is of opinion that there is no genuine issue as to any material fact, and that the plaintiff is entitled, as a matter of law, to a judgment granting the relief prayed for in paragraph 2 of his motion for summary judgment.

Having determined that the plaintiff is entitled to restoration to the employ of Penn Central as of the date of his application for reemployment, with full seniority, we now turn to the issues presented in Penn Central's alternative motion for summary judgment in its favor on the third-party complaint.

The essence of Penn Central's third-party claim is that it feared that unilateral placement of the plaintiff in a clerical position would result in a demand for penalty payments by BRAC, and that such action might well result in a strike by the clerical employees represented by BRAC. Penn Central asserts that the correspondence with officials of BRAC, particularly Mr. Kroll, referred to earlier herein, and the deposition of Mr. Metil demonstrate that these fears were well founded. Helton v. Mercury Freight Lines, Inc., 444 F.2d 365 (5th Cir. 1971), and Williams v. Sinclair Refining Co., 74 F.Supp. 139 (N.D.Tex. 1947), are relied on by Penn Central to support its contention that judgment should be rendered over against BRAC.

BRAC contends that the statutory duty of complying with the Act falls on

the shoulders of the employer, Penn Central, and that the employer is the only necessary party to an action to enforce the Act. BRAC further contends that the fears expressed by Penn Central are not substantiated by the correspondence between the officials of Penn Central and BRAC. It is also pointed out that the first knowledge BRAC had of the plaintiff's situation was as a result of Mr. Metil's letter of March 13, 1972, directed to Mr. Kroll. Finally, it is suggested that Penn Central did not go far enough up in the hierarchy of BRAC in seeking its concurrence in the employment of the plaintiff to render BRAC responsible for its nonconcurrence.

In *Helton* and *Williams*, the union intervened and actively sought to protect its members' seniority rights. Here, of course, BRAC was a stranger to the entire matter until March 13, 1972, and thereafter, its actions, viz. non-concurrence in placement of the plaintiff in a clerical position with seniority rights dating back to his initial employment as a brakeman, were, the Court believes, passive. Although Penn Central's fears of demands for penalty payments and possible labor unrest may not have been baseless, the record here does not support the conclusion that such action, particularly a strike by the clerical employees, was threatened by BRAC. Rather, in light of the entire record, it must be presumed that the placement of the plaintiff in a clerical position would have resulted in utilization of the grievance arbitration provisions of the collective bargaining agreement by the employee or employees adversely affected by this action.

■ In conclusion, the Court is of opinion that Penn Central's statutory obligation to reemploy the plaintiff is clear, and that the record fails to establish that the action of BRAC in refusing to concur in this placement of the plaintiff in a clerical position was such as would justify shifting the liability for non-compliance from Penn Central to

BRAC. It therefore follows that Penn Central's motion for summary judgment on the third-party complaint must be denied, and BRAC's cross-motion for summary judgment in its favor must be granted.

■ Both Penn Central and BRAC have contended that if plaintiff is entitled to relief, his delay in instituting the action should preclude the recovery of lost wages for the period prior to institution of the action. The Court has found that the delay in commencing the action was not unreasonable and that the delay is not attributable to the plaintiff. Further, a like contention was "rejected outright" in Teamsters Local Union 612 v. Helton, 413 F.2d 1380 (5th Cir. 1969), wherein the Court stated, at 1385:

> "[t]o hold that a veteran cannot recover for lost wages prior to filing suit would encourage immediate recourse to the courts instead of negotiation and settlement. Moreover, a primary policy of the statute involved here is expeditious restoration of veterans; if nothing were lost until suit was filed, there would be no encouragement to companies to act promptly in reinstating veterans."

■ The Court is, for these reasons, of opinion that the plaintiff's claim for back wages is not limited to the period subsequent to institution of the action, but, to the contrary, encompasses the entire period from his application for reemployment until he is reinstated. Further, on the basis of the authorities cited by the plaintiff, which will not be repeated here, the Court holds that the award of pre-judgment interest is appropriate in this instance.

Computation of the back wages to which the plaintiff is entitled may be made in accordance with the provisions of paragraph 28 of the Stipulation of Facts.

An appropriate order may be prepared and submitted for entry.