**William G. HEMBREE,
Plaintiff-Appellee-Cross-Appellant,**

v.

**GEORGIA POWER COMPANY,
Defendant-Appellant-Cross-Appellee.**

**No. 80–7054.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 20, 1981.

425

J. Lewis Sapp, David C. Hagaman, Robert H. Buckler, Atlanta, Ga., for defendant-appellant-cross-appellee.

Patrick M. Scanlon, Donald R. Livingston, Atlanta, Ga., for IBEW 84, amicus curiae.

William L. Harper, U. S. Atty., Wm. H. Berger, U. S. Dept. of Labor, Atlanta, Ga., Alice Daniel, Robert E. Kopp, Asst. Attys. Gen., U. S. Dept. of Justice, Helene R. Boetticher, Susan M. Webman, Attys., Carin A. Clauss, Sol. of Labor, Beate Bloch, Bobbye Spears, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee-cross-appellant.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges, and ALLGOOD *, District Judge.

FRANK M. JOHNSON, Jr., Circuit Judge:

In 1972 plaintiff was employed by defendant Georgia Power Company [the Company] in an other than temporary position in the Company's General Repair Shop. At that time, he terminated his employment in order to enter the armed forces. In 1974, while serving in active duty, plaintiff sustained an injury which left him functionally blind in one eye; he was subsequently honorably discharged. Plaintiff then sought reemployment with the Company as an apprentice electrician. At the time he applied for reinstatement, plaintiff had accumulated enough seniority to entitle him to bid on an apprentice position in any of the lines of progression in the General Repair Shop, including the position of apprentice electrician. However, medical recommendations of two company-designated doctors indicated that plaintiff's disability would disable him from safely performing the duties of apprentice electrician. Relying on these recommendations, the Company employed plaintiff as a Clerk B in the Parts Replacement Warehouse.[1] Plaintiff was the only clerk in that warehouse. After about six months, plaintiff expressed concern about working alone, and he requested and received an assignment to a Clerk B position in the General Repair Shop. The Clerk B position in the Parts Replacement Warehouse was later upgraded in pay.

In August, 1975, plaintiff contacted the Department of Labor, claiming that he had not been properly reemployed by the Company as required by the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021, et seq. Plaintiff contended that he should have been reemployed as an apprentice electrician. At the request of the Department of Labor, the company-designated physician again examined plaintiff and again concluded that plaintiff could not safely perform some of the duties of an apprentice electrician.

In September, 1975, the Company referred plaintiff to its Communications Department concerning an opening in the Communications Technician line of progression. A prerequisite to this position was a Second Class FCC license, which plaintiff did not have. Plaintiff twice attempted to pass the examination for the license, but was unsuccessful both times. Thus, plaintiff never formally qualified for this position.

* District Judge of the Northern District of Alabama, sitting by designation.

1. The Parts Replacement Warehouse is attached to the General Repair Shop.

In May, 1976, the Company urged plaintiff to bid on an opening in the Meterman C position in the Central Meter Shop. Plaintiff bid on this position, but qualified his bid to state that he would not relinquish his pursuit of the apprentice electrician's job. Company officials informed plaintiff, the bidder with the highest seniority, that he could have the position. The officials, however, also told plaintiff that they did not want him to transfer to the Central Meter Shop as an apprentice electrician. They informed plaintiff that, pursuant to the collective bargaining agreement, if he transferred he would retain his departmental seniority in the General Repair Shop for layoff purposes, but would begin with no departmental seniority in the Central Meter Shop. Plaintiff refused to accept the Meterman C position and informed Company officials that he intended to pursue the apprentice electrician's position through the Department of Labor. Plaintiff remained in his position as Clerk B in the General Repair Shop; from this position he was later promoted to Clerk A.

Plaintiff, represented by the Department of Labor, filed this action, contending that his reemployment did not comply with the Veterans' Reemployment Rights Act because he was not placed in a position of "like seniority, status, and pay, or the nearest approximation thereof." Concluding that the Company had not complied with the Act, the district court ordered the Company to employ plaintiff in the Central Meter Shop in the highest position for which he was at that time qualified, with departmental seniority dating from his original employment. However, observing that defendant attempted in good faith to comply with the Act, the district court denied plaintiff's prayer for prejudgment interest. Defendant Company appeals the judgment of

liability and the calculation of the back pay award, and plaintiff cross-appeals the denial of prejudgment interest. In addition, the International Brotherhood of Electrical Workers, Local Union No. 84, as amicus curiae, urges that the district court erred by granting plaintiff seniority from the date of original employment. We affirm in part and reverse in part.

The Veterans' Reemployment Rights Act was originally enacted in 1940 to provide special protections to veterans returning from the military service.[2] By requiring former employers of veterans to reinstate returning veterans to "such [former] position or to a position of like seniority, status, and pay," 38 U.S.C. § 2021(a)(B)(i), Congress mandated that the veteran "who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job ... [and was] ... to gain ... an advantage which the law withheld from those who stayed behind." *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 284, 66 S.Ct. 1105, 1110, 90 L.Ed. 1230 (1946). The Act was interpreted to entitle a returning veteran to "a position which, on the moving escalator of terms and conditions affecting that particular [pre-service] employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment." *Oakley v. Louisville & Nashville Railroad*, 338 U.S. 278, 283, 70 S.Ct. 119, 122, 94 L.Ed. 87 (1949).

While the original statute provided adequate employment protection for a nondisabled veteran, Congress soon recognized that the disabled veteran needed additional protection. *See generally* S.Rep.No.1268, 80th Cong., 2d Sess. 16 (1948). In 1948 Congress amended the Act to require that a returning, disabled veteran

---

**2.** The original Act was entitled the Selective Training and Service Act of 1940, *see* Pub. L. No. 76–783, 54 Stat. 885. The name of the Act was changed in 1948 to the Selective Service Act of 1948, *see* Pub. L. No. 80–759, 62 Stat. 604, and in 1951 to the Universal Military Training and Service Act, *see* Pub. L. No. 82–51, 65 Stat. 75. In 1967 the Act was renamed the Military Selective Service Act of 1967, *see*

Pub. L. No. 90–40, 81 Stat. 100, and in 1971 the name was changed to Military Selective Service Act, *see* Pub. L. No. 92–129, 85 Stat. 348, found at 50 U.S.C. App. 459. The reemployment provisions of the Military Selective Service Act were recodified in 1974 into 38 U.S.C. § 2021, *et seq.*, by the Vietnam Era Veterans' Readjustment Assistance Act of 1974, *see* Pub. L. No. 93–508, 88 Stat. 1578.

if not qualified to perform the duties of such [former] position, by reason of disability sustained during such service, but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be offered employment and, if such person so requests, be employed by such employer or his successor in interest in such other position the duties of which such person is qualified to perform as will provide such person like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in each person's case.

38 U.S.C. § 2021(a)(B)(ii).  It is this section that is applicable in the instant case.

■ The first contention on appeal is that the district court erred in concluding that defendant Company violated the Act by placing plaintiff in a position that did not provide him "like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in [his] case."  The Company argues that the district court construed the Act as requiring the Company to reinstate plaintiff to *the most* comparable position and therefore deprived the Company of all discretion in placing veteran employees.  The Company, however, has misread the district court's order.  The court explicitly acknowledged that "neither side may unilaterally dictate the position to which the veteran is entitled."  The district court did not require that defendant Company place plaintiff in

*the most* comparable position;  the court merely ruled that defendant must employ plaintiff in *a* comparable position.[3]  Because the court ascertained that the Clerk B position to which plaintiff was assigned was not comparable to the apprentice electrician position to which he was entitled had he not been disabled,[4] the court found a violation of the Act.  The record amply supports the district court's conclusion,[5] and we will not disturb it on appeal.

■ The Company next raises two objections relating to the calculation of the back pay due plaintiff.  First, the Company contends that, since the Clerk B position in the Parts Replacement Warehouse in which plaintiff was initially reemployed was later upgraded in pay, the upgraded pay scale should be used to determine back pay.  Assuming that if plaintiff had remained in the Clerk B position his position would have been upgraded, we observe that plaintiff had no way of knowing that this would be his fate.  We decline to require, upon penalty of diminishing an otherwise correctly calculated award, that veterans must foresee the future.

■ The Company's second objection relates to plaintiff's refusal to bid on the Meterman C position.  The Company urges that plaintiff should have bid on the meterman position—even though it did not as offered approximate the apprentice electrician position—and then should have litigated his right to full seniority.  While plain-

---

3.  If a company has two positions that approximate the position to which a disabled veteran would be entitled but for his disability, the differences in the positions might be so de minimis as to allow the company to place the returning employee in either position.  But such is not the case here, for the Clerk B position offered plaintiff upon his return did not approximate the apprentice electrician position to which plaintiff would have been entitled but for his disability.

4.  The Company contends that the district court's findings did not controvert its assertion that, by placing plaintiff in the Clerk B position, it reinstated plaintiff to a comparable position.  Suffice it to say that the Company has misread the district court's opinion.  For a comparison of the positions, see note 5 *infra*.

5.  The district court found that the Meterman C position more closely approximated the apprentice electrician position than did the Clerk B job actually offered plaintiff.  The differences in the meterman and clerk positions were substantial.  As to status, the evidence showed that the position of meterman, unlike that of a clerk, was a highly skilled classification, in which promotion and continued employment depend largely on company discretion.  As to pay, the difference amounted to more than $12,750 over a 4 year 3 month period.  Although the meterman position approximated the apprentice electrician position in pay, it was not compensated at as high a rate as was the apprentice electrician position.

tiff could have taken this course, *see* *McKinney v. Missouri-Kansas-Texas Railroad,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958); *Tilton v. Missouri Pacific Railroad,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), plaintiff was not required to accept a position that did not approximate the apprentice electrician in pay, status, *and* seniority. It follows that plaintiff's refusal to accept a position that did not fully comply with the statutory requirements should not be held against him.

■ Having determined that the district court correctly found that plaintiff was not reemployed in a comparable position and correctly calculated the back pay award, we turn to the Union's contention that plaintiff should not be awarded full seniority dating from the commencement of initial employment. Under the applicable collective bargaining agreement, an employee who transfers between departments loses departmental seniority. Thus, if a non-veteran employee transfers from a position such as apprentice electrician in the General Repair Shop to a position such as meterman in the Central Meter Shop, that employee would retain Company seniority for layoff purposes but lose departmental seniority for purposes such as demotion and promotion. Reasoning that the district court, in effect, ordered plaintiff transferred from his original department, namely, the General Repair Shop, to another department, namely, the Central Meter Shop, the Union urges that the collective bargaining agreement must control plaintiff's seniority. To hold otherwise, the Union argues, would be to ignore the contractual framework of the bargaining agreement and provide plaintiff with a right he could not have obtained had he never entered the armed services.

The parties do not dispute that plaintiff would have been entitled to employment as an apprentice electrician with seniority dating from the date of original employment if he had not been disabled. Because of plaintiff's disability, the Company was relieved of its obligation to employ him as an apprentice electrician and was instead required to place him in a position of, among other things, like seniority. If an appropriate position had existed in the General Repair Shop the Company could have placed him there. But an appropriate position did not exist in the General Repair Shop or, if one did, the Company chose not to place plaintiff there. Simply because the Company could not employ plaintiff in an appropriate position in the shop where he was originally employed did not relieve the Company of its obligation to employ plaintiff in a position of "like seniority, status, and pay, or the nearest approximation thereof . . . ." Rather, the Company was obliged to seek out a position comparable in seniority, status, and pay from its other divisions and offer that position to plaintiff. While fulfilling this obligation might have had the same effect of transferring plaintiff from the department in which he was originally employed to another, it was not in fact a transfer. And we do not think, as the Union argues, that the mere fact that granting plaintiff a position of like status and pay has the same effect as transferring plaintiff from one department to another dictates that plaintiff's seniority be computed as though he in fact transferred.

■ While the parties have not cited and we have not found a controlling case exactly on point,[6] the applicable legal principles

---

**6.** In *Armstrong v. Baker,* 394 F.Supp. 1380 (N.D.W.Va.1975), the district court decided a similar controversy and ruled that the statute took precedence over the collective bargaining agreement. Plaintiff in *Armstrong* was disabled from performing the duties of his former position and subsequently sought reemployment in a clerical position of like seniority, status, and pay. Because the two positions were located in different bargaining units, the positions were governed by different collective bargaining agreements. Nevertheless, the

court ordered plaintiff reemployed in the clerical position with full seniority carried over from the former position, saying:

To read into the statutory language the requirement that "such other position" must be within the same craft or collective bargaining unit as the former position . . . would require the Court to ignore the plain meaning of the statute and would be inconsistent with the object of the statute and the liberal construction which it is to be accorded.

*Id.* at 1386.

are clear. Congress did not include within the Act provisions for a seniority system; instead, Congress recognized "the existence of seniority systems and seniority rights ... [and undertook] ... to give the veteran protection within the framework of the seniority system...." *Fishgold, supra,* 328 U.S. at 288, 66 S.Ct. at 1112. The principles of the seniority system, however, must be applied in light of the recognition that the veteran is not represented at the bargaining table, *Palmarozzo v. Coca-Cola Bottling Co. of New York, Inc.,* 490 F.2d 586, 592 (2d Cir. 1973). Hence, a seniority system cannot "deprive the veteran of the benefits ... for which Congress has provided." *McKinney v. Missouri-Kansas-Texas Railroad, supra,* 357 U.S. at 268, 78 S.Ct. at 1224. Moreover, " 'no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act.' " *Alabama Power Co. v. Davis,* 431 U.S. 581, 584–85, 97 S.Ct. 2002, 2004–05, 52 L.Ed.2d 595 (1977) (quoting *Fishgold, supra,* 328 U.S. at 285, 66 S.Ct. at 1111). We think it clear that when a collective bargaining agreement conflicts with the Act, the provisions of the Act must prevail; to hold otherwise would allow companies and unions to bargain away, without the consent of veterans, the rights explicitly secured to veterans by Congress. In other veteran employment situations, courts have rejected similar attempts to give private agreements precedence over the Act. *See Coffy v. Republic Steel Corp.,* 447 U.S. 191, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980) (collective bargaining agreement cannot authorize denial of perquisites of seniority, namely, supplemental unemployment benefits, due reemployed veteran); *Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977) (pension plan cannot deny perquisites of seniority, namely, pension credit, due reemployed veteran); *Accardi v. Pennsylvania Railroad,* 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966) (collective bargaining agreement cannot au-

thorize denial of perquisites of seniority, namely, severance pay, due reemployed veteran); *Tilton v. Missouri Pacific Railroad,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964) (collective bargaining agreement cannot deny reemployed veterans seniority which they would have obtained but for their military absence); *Moe v. Eastern Air Lines,* 246 F.2d 215, 221 (5th Cir. 1957) ("It would seen obvious that, in the case of a conflict between the terms of the Universal Military Training and Service Act and the terms of a private contract, the Act must control."). We likewise reject this attempt.[7]

Granting plaintiff seniority from the date of his original employment is not, as the Union argues, according him "super-rights." It is only granting him what Congress has determined he is due, namely, employment in a position of "like seniority, status, and pay, or the nearest approximation thereof ...." Once plaintiff is employed in an appropriate position, any subsequent transfer is subject to the provisions of the collective bargaining agreement. We emphasize, however, that until plaintiff has been offered employment of "like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in [his] case," the provisions of the collective bargaining agreement cannot be given precedence.

■ Finally, we address plaintiff's contention on cross-appeal that the district court abused its discretion in denying plaintiff prejudgment interest solely on the basis of the Company's good faith attempt to comply with the Act. It may be true that as a general rule assessment of prejudgment interest is discretionary. *See Helton v. Mercury Freight Lines, Inc.,* 444 F.2d 365 (5th Cir. 1971) (awarding prejudgment interest in a veteran's reemployment case); *National Marine Service, Inc. v. Talley,* 348 F.2d 589 (5th Cir. 1965) (awarding prejudgment interest in a collision case). *But see Marshall v. Hope Garcia Lancarte, Inc.,* 632

---

**7.** As a sidenote, we observe that following the Union's rationale would have the effect of penalizing plaintiff solely because of his injury, a result that Congress surely never contemplated.

F.2d 1196 (5th Cir., 1980) (prejudgment interest should be allowed on award for violation of Section 17 of the Fair Labor Standards Act); *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191, 1194 (5th Cir. 1976) ("It is well established that prejudgment interest should be allowed on the amount found to be due."). But in any event a trial court does not have unbridled discretion to deny the award. In other contexts, we have recognized that "the only way the wronged party can be made whole is to award him interest from the time he should have received the money." *Louisiana & Arkansas Railway v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir. 1966). We have likewise recognized that good faith is not a defense to the assessment of prejudgment interest. *Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir. 1973). In this case, it is clear that plaintiff was deprived of reemployment rights explicitly granted to him by Congress. The only way he can be made whole is by awarding him prejudgment interest. It was an abuse of discretion to deny plaintiff prejudgment interest, and we accordingly reverse that part of the district court's order.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.