Richard A. BLAKE, Plaintiff,

v.

CITY OF COLUMBUS, Defendant.

No. C-2-83-31.

United States District Court,
S.D. Ohio, E.D.

Dec. 28, 1984.

Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, for plaintiff.

Guy L. Reece, II, Asst. City Atty., Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

Plaintiff filed this action on January 5, 1983, under Section 404(a) of the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.* Plaintiff alleges that defendant, City of Columbus, violated 38 U.S.C. § 2024(d) by refusing to reinstate plaintiff to his pre-service position with the Division of Police with such seniority, status, pay and vacation as plaintiff would have had if he had not been absent for military service. Defendant denies committing any violations of the Act and claims that plaintiff has received all re-employment benefits to which he is entitled. Defendant further claims that this action is barred pursuant to the doctrine of laches. This action is presently before the Court on plaintiff's motion for summary judgment. In addition, by agreement of the parties, the case was submitted to the Court upon the joint stipulation of facts, other evidence of record, and briefs for decision on the merits. The Court's findings of fact and conclusions of law are set forth below.

I

The essential facts as they appear in the joint stipulation of facts, the depositions, and other matters of record are as follows.

1. Plaintiff was hired by the City of Columbus on May 1, 1967, as a full-time police patrolman in the Division of Police, Department of Public Safety.

2. On August 11, 1967, plaintiff was ordered to active duty for training in the Army National Guard for a period of duty from August 12, 1967 to September 2, 1967.

3. During the course of his military duties plaintiff suffered a severe injury to his right hand and arm when he was loading a mortar on August 22, 1967.

4. From August 1967 to February 1968 plaintiff received surgery and treatment for his injury on an inpatient and outpatient basis at military hospital facilities.

5. In February 1968, plaintiff returned to Columbus and applied for reinstatement with defendant Division of Police.

6. Defendant's chief physician determined that because of his injury plaintiff was not qualified to perform the duties of a police patrolman in the Division of Police and would not be so qualified in the foreseeable future. Although a physician with the Walter Reed Army Medical Center issued his opinion that plaintiff would regain improved use of his hand over several months and that plaintiff was presently qualified to perform light duty work, defendant refused to reinstate him.

7. On April 18, 1968, plaintiff was transferred to the Department of Services, Division of Airport, based upon his inability to operate a firearm in accordance with the Division of Police standards as determined by the City Chief Physician.

8. Plaintiff served as a full-time Airport Police Officer with the Division of Airport from April 16, 1968 until April 13, 1969. On April 13, 1969, plaintiff was restored to the Division of Police as a Patrolman pursuant to the Chief City Physician's determination that plaintiff was qualified to perform the duties of a police patrolman.

9. The airport police were uniformed and they were authorized to use a .38 caliber revolver. Their duties included making felony and misdemeanor arrests.

10. From 1968 through 1971 plaintiff, acting alone and through counsel, sought to be returned to the Division of Police and after his transfer back to the Division of

Police sought to regain police department benefits lost while plaintiff was with the Division of Airport.

11. On July 15, 1971, the City of Columbus Civil Service Commission determined that plaintiff had continuous service from May 1, 1967. The period of continuous service is the period of the employee's service, uninterrupted by resignation, retirement, or discharge for cause, excluding leaves of absence without pay except military leave.

12. Plaintiff has been on active service with the Division of Police since April 13, 1969. Active service is defined as "being present for the performance of duties to which an officer ... of the City of Columbus has been assigned." In this case, active service has been construed by the defendant to mean that time actually spent in service with the Division of Police.

13. Plaintiff has been denied advancement on the Division of Police administrative seniority list to May 1, 1967, his original date of appointment to the Division of Police. Plaintiff's current adjusted appointment date on the seniority list is May 11, 1968. The seniority list is based on total active service with the Division of Police, including periods of active military service. This seniority list is used as an administrative tool to determine priorities for transfers, days off, and vacation time. The date plaintiff is considered to have begun "active" service also determines his eligibility for pension benefits.

14. Plaintiff asserts he first learned that he did not have the same status on the administrative seniority list as that of his continuous service when he did not receive some benefits that such status would have entitled him to in 1975. Prior to 1975 plaintiff states that he had no reason to believe that his seniority status based on active service was not equal to his continuous service.

## II

This case is before the Court on plaintiff's motion for summary judgment. A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. There are two issues in this case. The first issue presented is whether the doctrine of laches bars plaintiff from asserting in a lawsuit filed in 1983 his claim under the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.*, regarding a cause of action which accrued in 1968.

■ Congress did not provide a federal statute of limitations to limit the period of time in which a suit may be brought under this statute. Under the enforcement procedures of 38 U.S.C. § 2022 Congress specifically states that "no State statute of limitations shall apply to any proceedings under this chapter." Courts will apply the equitable doctrine of laches to determine whether plaintiff has unduly delayed the filing of his claim. In determining whether the doctrine of laches applies in a case brought pursuant to 38 U.S.C. § 2022, "[a] court should focus upon the length of the delay, the reasons therefor, how the delay affected the defendant, and the overall fairness of permitting the assertion of the claim." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 806 (8th Cir.1979). *See Stevens v. Tennessee Valley Authority*, 712 F.2d 1047, 1056 (6th Cir.1983). If both elements are met, the doctrine of laches bars the lawsuit.

Defendant argues that there was inordinate and inexcusable delay when plaintiff asserted a claim in 1983 which had accrued about 15 years earlier in 1968. Plaintiff counters this argument by asserting that except for a five-year period of time from 1976 to 1981 when plaintiff did not press his claim, the delay is excusable because of plaintiff's continuous efforts from 1968 to 1976 to have his full status with the Division of Police restored and plaintiff's efforts at negotiating a settlement with defendant through the United States Attorney's office from 1981 until this lawsuit was filed in 1983.

The facts presented do not fully support this contention by plaintiff. Although it appears that plaintiff actively pursued his claim to regain full status with the Division of Police from 1968 to 1971, it is equally clear that from 1971 to 1975 plaintiff did nothing because he was under the mistaken belief that he had achieved his goal in 1971.

At first blush the United States Court of Appeals for the Sixth Circuit appears to subscribe to the view that laches is rebuttably presumed if suit is commenced after the most analogous state statute of limitations has run. Thereafter plaintiff has the burden of persuasion to show excusable delay and absence of prejudice to defendant. This is the substance of the Court of Appeals holding in *TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 348–49 (6th Cir.1979), a case involving federal patent law and a patent infringement action. In *Greathouse v. Babcock & Wilcox Co.*, 381 F.Supp. 156, 163 (N.D.Ohio 1974) the court used similar reasoning in deciding a case under the Vietnam Veterans Readjustment Assistance Act. However, dicta in a recent case strongly suggests that the Sixth Circuit has abandoned this view and would now follow the Eighth Circuit's approach in *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir.1979) whereby a state statute of limitations is only one element to be considered in determining whether the length of the delay was unreasonable and whether the potential for prejudice was great.

In *Stevens v. Tennessee Valley Authority*, 712 F.2d 1047 (6th Cir.1983), plaintiff brought an action under 5 U.S.C. § 3551, the Veterans Preference Act, seeking reinstatement with full seniority to his pre-service position with the TVA. The defense of laches was raised by defendant. Congress did not specifically provide a statute of limitations for that Act so the Court looked to 38 U.S.C. § 2022 as an analogy for guidance on the effect of the running of a state statute of limitations.

After noting the rule which had been applied in *TWM Mfg. Co., supra* and *Greathouse, supra,* the Sixth Circuit stated:

Whatever may be the wisdom of that rule generally, it is in our view one which ought not be applied rigidly here where Congress has so clearly eschewed any reliance on state statutes of limitations with respect to claims of veterans for reemployment. We do not have a comparable or analogous statute of limitations for the simple reason that Congress has said that there shall be none in that cause of action [38 U.S.C. § 2022] is most nearly analogous to the one involved here [5 U.S.C. § 3551].

*Stevens v. Tennessee Valley Authority*, 712 F.2d 1047, 1056 (6th Cir.1983). The Sixth Circuit then noted the factors set forth in *Goodman, supra,* as a guideline for applying the doctrine of laches in cases involving 5 U.S.C. § 3551.

█ The Court believes the period from April 1968 through July 1971, during which plaintiff was actively negotiating with defendant to resolve the dispute concerning his employment status, to be reasonable delay. *See* Blake affidavit pp. 1–2. In addition, that period of time from December 1975 through September 1976, during which plaintiff was engaged in discussion with the department concerning his status in "active" versus "continuous" service is also excludable delay. Similarly, the period from 1981 to 1983 during which the United States Attorney's office was attempting to negotiate a settlement between the parties is not to be charged to plaintiff. *See Armstrong v. Baker*, 394 F.Supp. 1380, 1385 (N.D.W.Va.1975). Whether plaintiff acted reasonably when he waited four years from 1971 to 1975 without action is more problematic. It is conceivable that once plaintiff received the "continuous service" status he sought in 1971 he may not have realized he still lacked the equivalent "seniority" status. However, when coupled with the subsequent five-year period from 1976 through 1981 in which plaintiff sat on his rights, the entire delay becomes unreasonable. Under the *Goodman* analysis overall fairness requires this Court to hold that the plaintiff unreasonably delayed asserting his rights

under the Act and that the first prong of the laches test has been met.

A valid laches defense requires that plaintiff's unreasonable delay results in prejudice to the defendant. There are two kinds of prejudice which might support a defense of laches: (1) the delay has resulted in the loss of evidence which would support the defendant's position; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. *Tobacco Workers International Union Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971); *see Goodman, supra,* at 808 n. 17. Defendant argues that it has been prejudiced by the delay because most of the potential witnesses are no longer in defendant's employ. Defendant concludes that these witnesses are no longer available to provide testimony; however, defendant provides no specific examples to support this conclusion. Defendant did not attempt to identify the lost witnesses or what the nature of their expected testimony in support of defendant's position would be.

Plaintiff has correctly pointed out that at least two employees, plaintiff Richard Blake and Chief of Police Dwight D. Joseph, were still employed by defendant and were available as witnesses for deposition during the course of this litigation. Moreover, defendant has not indicated that it has changed position in any manner which it might not have done had plaintiff not delayed.

After carefully balancing the equities involved in this case and considering the overall fairness to the parties, the Court concludes that defendant has not met its burden of showing that plaintiff's delay caused prejudice to defendant. Thus the second prong of the laches test has not been met. The Court holds that since the test of laches was not met in the instant case plaintiff is not barred from asserting his claim by the doctrine of laches. Defendant's motion to dismiss on the basis of laches is DENIED.

The second question presented by this case is whether the provision of the Columbus City Code, which as applied, prevents plaintiff from collecting all benefits to which he would have been otherwise entitled due to plaintiff's transfer from the Division of Police to the Division of Airport upon his return from military service, is overriden by the language and intent of the Vietnam Era Veterans Readjustment Assistance Act.

The threshold question is whether defendant complied with the requirements of 38 U.S.C. § 2024(d) when defendant transferred plaintiff to the Division of Airport upon plaintiff's return from military service. Pertinent language in 38 U.S.C. § 2024(d) states:

> ... If an employee covered by this subsection (members of Reserve components of the Armed Forces ordered to active duty for training for less than three months) is not qualified to perform the duties of such employee's position by reason of disability sustained during active duty for training or inactive duty training, but is qualified to perform the duties of any other position in the employ of the employer ..., such employee shall be offered employment and, if such person so requests, be employed by that employer ... in such other position the duties of which such employee is qualified to perform as will provide such employee like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in such employee's case.

Plaintiff was at all times relevant an employee of the City of Columbus. Due to a service-related disability the defendant's chief physician found plaintiff to be unqualified to return to his former position as a patrolman with the Division of Police. Plaintiff was then transferred to the Division of Airport for approximately one year during which he recovered from his disability. Plaintiff's position at the Division of Airport differed somewhat from that as a police officer with respect to his duties and benefits received. On May 11, 1968, plaintiff was restored to his position as a patrolman with the Division of Police.

■ Defendant argues that, by placing plaintiff with the Division of Airport, it fulfilled its obligation to place him in a position providing the nearest approximation of his former job and available benefits. Plaintiff contends that he could have been placed in a "light duty" position within the Division of Police until he had recovered from his disability. He argues that this is particularly evident in light of the fact that his duties with the Division of Police included the use of a weapon, the very factor which the defendant's chief physician argued made him unqualified for the position of patrolman. Defendant does not deny that light duty positions were available but argues that 38 U.S.C. §§ 2021 and 2024 do not speak of providing a returning serviceman his position in a "light duty status." The Court agrees that Title 38 U.S.C. § 2024(d) does not attempt to preempt the employer's right to determine what position a disabled veteran is qualified to perform but rather it focuses on what seniority, status, and pay the veteran is entitled to receive, upon his return from active military duty and placement in a position he is qualified to perform with the employer.

It is well settled that the Veterans' Reemployment Act is for the benefit and protection of persons covered therein. In *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) the Supreme Court stated that "the Act should be liberally construed so that a veteran steps back on the seniority escalator at the precise point he would have occupied had he kept his position continuously rather than enter the armed forces." As the Fifth Circuit pointed out in *Hembree v. Georgia Power Co.*, 637 F.2d 423 (1981), Congress recognized soon after the original Veterans Reemployment Rights Act was passed that disabled veterans needed additional protection. In addressing this need, Congress added 38 U.S.C. § 2021(a)(B)(i), a section analogous to the last sentence of 38 U.S.C. § 2024(d) which section is pertinent in the case at bar. *Hembree* involved a veteran who was no longer qualified to perform his preser-

vice position due to a disability resulting from an injury received while on active military duty. The Fifth Circuit found that the Act imposed a duty on the employer to offer the employee a position of like seniority, status, and pay. "Simply because the company could not employ plaintiff in an appropriate position in the shop where he was originally employed did not relieve the company of [this] obligation ..." *Hembree* at 428. The *Hembree* court held that plaintiff should be granted seniority from the date of his original employment notwithstanding the employer-union collective bargaining agreement which provided that when an employee transferred to a new department he would lose departmental seniority. The Fifth Circuit stated, "And we do not think, as the Union argues, that the mere fact that granting plaintiff a position of like status and pay has the same effect as transferring plaintiff from one department to another dictates that plaintiff's seniority be computed as though he in fact transferred." *Hembree* at 428.

■ In the case at bar the benefits plaintiff is seeking are "seniority benefits." As stipulated, defendant's seniority list is used as an administrative tool to determine priorities for transfer, days off and vacation. Such use of seniority is within the intent of Congress as the term is used in 38 U.S.C. § 2021 *et seq.* Defendant argues that seniority is based on active service with the Division of Police and that plaintiff was not on active duty with the Division of Police while he was in the Division of Airport of defendant. The issue is whether, in the facts present in the case at bar, defendant's regulations which differentiate between active service with the Division of Police and continuous service with the City of Columbus can operate to deprive plaintiff of seniority benefits to which he would have been entitled had he not been injured while on military duty.

First, the Court notes that defendant's position concerning plaintiff's inability to function as a patrolman is entitled to some deference. The responsibilities of a full-time police officer are such that a physical

impairment, however limited, may be sufficient to justify a decision not to employ a returning serviceman in that capacity.

Had plaintiff been permanently transferred to another Division of the City, his vacation time, days off and pension benefits would have been determined in accordance with that time spent in "continuous service" with the City. He would, therefore, have to his credit the year spent in the Division of Airport in determining such benefits. Had plaintiff been placed in a position within the Division of Police with duties comparable to those which he had as an officer with the Division of Airport, he would be considered to have been in "active service" since May 1967 and receiving benefits determined therefrom. It seems anomalous to the Court that the change in Divisions should operate to deny plaintiff credit for a year of employment to which he would have been entitled had either one of the above circumstances been true.

This Court considers this aspect of the case analogous to the *Hembree* employer departmental transfer situation and the Court feels a similar result is appropriate here. The Supreme Court has held that "no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." *Fishgold v. Sullivan,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1945). This Court finds that defendant's practice is one which reduces service adjustment benefits to which plaintiff is entitled. As such, defendant's practice is preempted by 38 U.S.C. § 2024(a). The Court further finds that to the extent the Columbus City Code conflicts with the Act, the provisions of the Act must prevail to serve Congressional intent to secure certain rights to returning veterans.

For the reasons set forth above, the Court finds that there are no issues of material fact and that plaintiff is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is GRANTED. Defendant is ORDERED to credit plaintiff with continuous active service

with the defendant's Division of Police from May 1, 1967 for the purpose of determining plaintiff's standing on the administrative seniority roster. Defendant is further ORDERED to compensate plaintiff for any loss of pay and benefits suffered by plaintiff as a result of the incorrect seniority standing.