Sam J. HIRE, Plaintiff-Appellee,

v.

E. I. DuPONT De NEMOURS & COMPANY, Inc., Defendant-Appellant.

No. 15277.

United States Court of Appeals
Sixth Circuit.

Nov. 18, 1963.

W. Ovid Collins, Jr., Nashville, Tenn., (W. B. De Riemer, Wilmington, Del., Charles L. Cornelius, Nashville, Tenn., on the brief), for appellant.

Joseph L. Lackey, Jr., Nashville, Tenn., (Kenneth Harwell, U. S. Atty., Jeter S. Ray, Regional Attorney, John D. Black, Attorney, U. S. Dept. of Labor, Nashville, Tenn., on the brief), for appellee.

Before WEICK, Circuit Judge, DARR, Senior Judge, and TAYLOR, District Judge.

TAYLOR, District Judge.

This is an appeal by E. I. DuPont De Nemours & Company, Inc., defendant-appellant, hereinafter called defendant, from an order of the District Judge sustaining motion for summary judgment of Sam J. Hire, plaintiff-appellee, hereinafter called plaintiff, and dismissing motion for summary judgment of the defendant.

The action is based on Section 9(d) of the Universal Military Training and Service Act of 1951, as amended,[1] (50 U.S.C. Appendix 459(d), 1958 Ed.), hereinafter sometimes called the Act. Judgment was rendered by the District Court in favor of plaintiff for the sum of $1,292.80 representing severance pay under the terms of a collective bargaining agreement between the defendant and the Old Hickory Rayon Employees' Council, exclusive bargaining agent for the employees of defendant employed at the location in the plant where plaintiff worked at the time he entered military service. The pertinent facts were stipulated and are substantially as follows:

Plaintiff began work for the defendant on November 1, 1945 and worked continuously until July 2, 1954 when he entered the military service of the United States. He was given two months' pay as "military service pay" in accordance with the defendant's labor relations policy which was apart from the bargaining agreement with the employees.

On July 28, 1958 he was released from military service under honorable conditions and made application for reinstatement on July 31, 1958. Because of the Labor Agreement that was in force, defendant could not restore plaintiff to a position of like seniority, status and pay but in accordance with the Labor Agreement placed him on the recall list for recall duty when production increased sufficiently for him to return to work. His position on the recall list was in conformity with his seniority status under the Labor Agreement.

On August 22, 1956, while plaintiff was in the service, because of lack of work defendant terminated the employment of employees whose seniority was both more and less than plaintiff's and on October 7, 1956 these employees were recalled for active duty and on December 9, 1957 again terminated employees of both greater and less seniority than plaintiff due to lack of work.

The severance pay provision of the Supplemental Bargaining Agreement[2]

[1.] "In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c) (1) [of this section], the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions * * * to require such employer * * * to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action * * *."

[2.] "Section. 1. An employee who has one (1) year or more of service shall be paid

was not in effect when plaintiff entered military service on July 2, 1954 but became effective February 7, 1956 by an Agreement dated April 13, 1956. It continued without change through the calendar year 1958.

Application was made for severance pay on August 18, 1958 and refused on August 26, 1958. Under plaintiff's original theory he was entitled to $1,292.80, but during the argument before the Court of Appeals he abandoned his claim for the two periods while in the Army, but still claims approximately $370.30 for severance pay after his return from the Army and upon his restoration to the recall list.

Defendant's answer asserted that plaintiff's right of action was barred by the Tennessee statute of limitations of three years. Title 28 T.C.A. § 305.[3]

The District Court held in effect that: (1) plaintiff's severance pay was not a "monetary liability for personal services rendered"; and (2) his claim was not based upon the violation "of any federal or state statute."

The District Judge pointed out that the Act creates only employment rights and that liabilities that may result from the recognition of the reemployment rights are created by the employment relationship; that the reemployment rights do not fall within the language of the Act as ordinarily understood and when there is doubt as to which of two statutes of limitations should apply, the longer one is preferred, which in this case is the ten year statute, 28 T.C.A. § 310.[4]

Plaintiff also relies upon the six year statute of limitations, which is 28 T.C.A. § 309.[5]

The District Court further held that when defendant placed plaintiff on its recall list for recall duty in conformity with his seniority status under the existing Labor Agreement, he was restored to a position of like seniority, status and pay within the meaning of Section 9(c) of the Universal Military Training and Service Act, as amended,[6]

---

severance pay each time he is terminated because of lack of work. * * *

"Section 2. Management may elect to pay severance pay in a lump sum or in weekly installments. However, in the case of termination because of lack of work resulting from reduction in product sales or shipments, severance pay will normally be paid in weekly installments. When a former employe is offered reemployment, severance pay, if being paid in weekly installments shall be discontinued. * * * * *

"Section 4. An individual who has received severance pay shall not be required to return any portion of such pay to the COMPANY in the event he is reemployed. * * * * *

"Section 8. The severance pay provided under this Article, is conditioned on termination because of lack of work during the term of this Agreement."

3. "Actions for injuries to personal or real property, actions for the detention or conversion of personal property, civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability, and actions for alienation of affections, shall be commenced within three (3) years from the accruing of the cause of action."

4. "Actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds, actions on judgments and decrees of courts of record of this or any other state or government, and all other cases not expressly provided for, shall be commenced within ten (10) years after the cause of action accrued."

5. "Actions for the use and occupation of land and for rent; * * * and actions on contracts not otherwise expressly provided for, shall be commenced within six (6) years after the cause of action accrued."

6. "(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered

(50 U.S.C. App. Sec. 459(c) 1958 Ed.) and entitled to severance pay for lack of work.

 Since the Federal Act is without a statute of limitations, the Tennessee statute of limitations applies. Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280; Walsh v. Chicago Bridge & Iron Co. (D.C.N.D.Ill.E.D.), 90 F.Supp. 322, 326.

Under Title 28 T.C.A. § 305, unless suit is commenced within three years from the time the cause of action accrues it is barred. The record indicates that the case was tried in the District Court upon the assumption that plaintiff's cause of action accrued either on August 18, 1958, the date he filed application to return to work, or on August 26, 1958, the date that he was refused active service. The suit was not filed until October 9, 1961, or more than three years after the cause of action accrued.

Plaintiff contends that liability, is not a liability for "personal services rendered" within the meaning of 28 T.C.A. § 305, but a liability that stems from the Labor Agreement. The Supplemental Agreement previously referred to and quoted in Footnote 2 provides for severance pay for each employee who has one year or more of service and for each time that he is terminated due to lack of work. Although the Agreement does not set forth the basis upon which the pay is calculated, it is a well known general practice to calculate it on the basis of the number of years of service.

The District Judge did not indicate clearly as to whether the sum allowed included amounts that accrued while plaintiff was in the Army. The Assistant United States Attorney stated in his argument that the sum allowed included amounts that accrued on two accasions while plaintiff was away from work in the Army; that it also included an amount that accrued after he returned from military service. This was estimated to be $370.30.

The District Judge found that "plaintiff was terminated, within the meaning of the agreement, at some time between his period of active employment before his military service and his placement on the recall list on his return * * * if he was not terminated within the meaning of the agreement at the time his military leave began, then he must have been terminated while on leave or upon his return from military service. All dates in this record that might be taken as a termination date, other than his departure from military service, fall in the period subsequent to adoption of the severance pay agreement in 1956."

Section 9(c) (1) of the Act provides in pertinent part as follows:

"Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] * * * shall be entitled to participate in insurance or other benefits offered by the employer pursuant *to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces* * * *." (Emphasis added.) Copied in Footnote 6.)

 It was not shown that employees of defendant while on furlough or leave of absence were granted severance pay at the time plaintiff entered military

by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment, as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

service and under the above quoted section of the Act plaintiff is precluded from receiving severance pay while in the military service. Dwyer v. Crosby Company (C.A. 2, 1948), 167 F.2d 567, 569. Compare: Alvado v. General Motors Company (C.A. 2, 1955), 229 F.2d 408.

■ The next question for consideration is whether plaintiff is entitled to severance pay for the period following his restoration to the recall list for recall after his return from military service. Defendant asserts that the employee must be restored to active service before he is restored to a position within the meaning of the Act. We agree with the District Judge in concluding that active service was not necessary to entitle plaintiff to severance pay.

In the case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, the Supreme Court stated:

"* * * Moreover, a veteran on his return is entitled to his old 'position' or its equivalent even though at the time of his application the plant is closed down, say for retooling, and no work is available, unless of course the private employer's 'circumstances have so changed as to make it impossible or unreasonable' to restore him. § 8 (b) (B) [now § 9(b) (B)]. He is entitled to be recalled to work in accordance with his seniority. His 'position' exists though no work is then available. The slackening of work which causes him to be laid off by operation of a seniority system is neither a removal or dismissal or discharge from the 'position' in any normal sense." 328 U.S. p. 288, 66 S.Ct. pp. 1112–1113, 90 L.Ed. 1230.

Section 9(b), subsection (B) (i) reads in part:

* * * * *

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

* * * * *

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *."

The Act restored plaintiff to his old position when he returned from military service and this entitled him to severance pay. Active service was not a prerequisite to the severance benefit.

"* * * And the fact that the position given to the petitioner did not carry with it actual work for wages does not alter the situation. The only difference between the Fishgold case and the instant one is that in the former the petitioner was given work for a short time, or intermittently, whereas here the petitioner was never given any work at all, but this, being only a difference of degree, does not serve to distinguish the two cases. * * *" Boston & M. R. R. v. David, 1 Cir., 167 F.2d 722, 726.

■ Nor does the change of circumstances in defendant's business relieve it from the payment of severance pay. The question is not free from doubt, however. Kelly v. Ford Instrument Co. Div. of Sperry-Rand Corp., 2 Cir., 298 F.2d 399, 404; Siaskiewicz v. General Electric Co., 2 Cir., 166 F.2d 463. Compare: Brown v. Watt Car & Wheel Co., 6 Cir., 182 F.2d 570, 571, 572.

This brings us to what we conceive to be the decisive question in the case, namely, whether the Tennessee three year statute of limitations bars the action. The statute provides in pertinent part as follows:

"Actions for injuries to personal or real property, * * * civil actions based upon the alleged violation of any federal or state statute creating monetary liability for per-

sonal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability * * * shall be commenced within three (3) years from the accruing of the cause of action." 28 T.C.A. 305. (This statute was quoted in Footnote 3.)

The District Court was of the opinion that severance pay was not "monetary liability for services rendered" and that the liability of the defendant to the plaintiff was not created by the Universal Military Training and Service Act, as amended.

No case has been cited or found construing the language of the foregoing Tennessee statute as applied to facts similar to the facts in this case. Many federal courts have held that severance pay and other like fringe benefits provided for in labor agreements are additional wages.

In the case of In re Wil-low Cafeteria, Inc. (C.A. 2, 1940), 111 F.2d 429, 432, the Court, speaking through Judge August N. Hand, observed that:

> "A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of the employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed. If the employer had discharged the employee wrongfully after the latter had done the work necessary to earn a vacation he could not be deprived of the benefits due him. * * *"

The Court held in the case of In re Public Ledger, Inc. (C.A. 3), 161 F.2d 762, 773, 774, that severance pay was wages for services rendered and entitled to priority under the bankruptcy act.

In the case of In re Elliott Wholesale Grocery Co. (D.C.S.D.Cal., 1951), 98 F. Supp. 1017, affirmed under the style of McCloskey v. Division of Labor Law Enforcement (C.A. 9), 200 F.2d 402, it was held that severance pay was in lieu of wages and was entitled to preferred claim status both under the bankruptcy act provision recognizing all valid state liens and California statute giving preferred status to wages earned within 90 days prior to assignment of creditors. The Court stated that:

> "Provisions of this character, whether they call for wages on discharge without notice, or for payment for earned vacation periods, are generally considered wages,— that is, compensation for services rendered, which, through no fault of the employee, he was not permitted to render. (Citing cases.)
>
> * * * * *
>
> "These rulings also find support in the income tax cases which consider severance pay additional compensation. * * *" 98 F.Supp. pp. 1018, 1019.

We are of the opinion that plaintiff's severance pay was a "monetary liability for personal services rendered" within the meaning of the Tennessee statute.

The final question for determination is whether defendant's liability, if any, arises from its violation of the Federal Act within the meaning of the Tennessee statute of limitations. The complaint alleges that plaintiff's action arose under Section 9(d) of the Act. Plaintiff contends that liability arises from an alleged violation of the Labor Agreement. It is our view that the Labor Agreement provided for the benefit but the Act gave it vitality by making it possible for the returning soldier to receive pay and providing a means of enforcement.

It was held in the case of Alvado v. General Motors Company, supra, that the liability was created by statute within the meaning of the New York Civil Practice Act. Plaintiff insists that the Al-

vado case is not helpful because the point was stipulated and it is in conflict with the decision in the case of Gonzales v. Tuttman (S.D.N.Y., 1945), 59 F.Supp. 858. It is true that the point was stipulated, and the Court did not consider the legal question except to adopt the stipulation. The Gonzales case involved a suit by employees against a Puerto Rican corporation and some of its officers and directors to recover wages from the corporation under the Fair Labor Standards Act. Defendant moved for summary judgment and the motion was denied because an issue of fact was involved. Other questions were involved and discussed by the Court which were not pertinent to the question under consideration. We are unable to agree with plaintiff that the decision in the Gonzales case conflicts with the decision in the Alvado case.

The Labor Agreement alone did not create liability in our case. In the case of J. I. Case & Co. v. N. L. R. B., 321 U. S. 332, 64 S.Ct. 576, 88 L.Ed. 762, the Supreme Court of the United States discussed the significance of a labor agreement:

"Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. * * *" 321 U.S. pp. 334, 335, 64 S.Ct. pp. 578–579, 88 L.Ed. 762.

The case of McKinney v. Missouri-Kansas-Texas R. Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 involved an action which arose out of proceedings to enforce the claim of a veteran to reemployment rights under Section 9 of the Act. In that case, the Court stated:

"The Court of Appeals correctly held that petitioner was not obliged, before bringing suit in the District Court under § 9(d) of the Act, 62 Stat. 616, as amended, 50 U.S.C.App. (Supp.V) § 459(d), to pursue remedies possibly available under the grievance procedure set forth in the collective bargaining agreement or before the National Railroad Adjustment Board. See 48 Stat. 1189–1193, 45 U.S.C. § 153. *The rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement.* Although the statute does not itself create a seniority system, but accepts that set forth in the collective bargaining agreement, it requires the application of the principles of that system in a manner that will not deprive the veteran of the benefits, in terms of restoration to position and advancement in status, for which Congress has provided. Petitioner sues not simply as an employee under a collective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces." (Emphasis added.) 357 U.S. pp. 268, 269, 78 S.Ct. pp. 1224, 1225, 2 L.Ed.2d 1305.

Plaintiff, a veteran, in the present case, sued to enforce special rights bestowed upon him under the Federal Act because of his service as a soldier. The proper determination of these rights require an interpretation of the Labor Agreement. Liability would not exist except for the Act. Plaintiff waited more than three years after his cause of action accrued in which to institute suit. Since liability is based on the alleged violation of the Federal Act which created "monetary liability for personal

services rendered" his action is barred by the Tennessee three year statute of limitations. 28 T.C.A. § 305.

The judgment of the District Court is reversed and the case remanded with instructions to dismiss the complaint.