Pasquale J. ACCARDI, Jacob Grubesick, Alfred J. Seevers, Anthony J. Vassallo, Abraham S. Hoffman, and Frank D. Pryor, Plaintiffs,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant.

United States District Court
S. D. New York.
April 28, 1964.

194

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for plaintiffs; James G. Greilsheimer, Asst. U. S. Atty., of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant; R. L. Duff, New York City, of counsel.

METZNER, District Judge.

The action seeks relief under the re-employment rights given to veterans. § 9 of the Universal Military Training and Service Act, 50 U.S.C.App. § 459. The parties cross-move for summary judgment. There is no dispute as to the facts.

The plaintiffs are former employees of the defendant, the Pennsylvania Railroad. All had left their employment to enter military service. Upon being honorably discharged from service, they were reinstated in their employment with the same seniority, status and pay as had been achieved by those employees who did not enter military service. In Decem-

ber 1960 the Transport Workers Union and defendant entered into an agreement to settle an existing strike. The agreement provided for the abolition of certain positions and payment of separation allowances to the discharged employees based upon their years of compensated service. In computing the amount of separation allowances for these six plaintiffs, they did not receive credit for the years spent in the armed forces. The action seeks recovery of the amounts payable to these plaintiffs with that credit.

The determination of this issue depends upon the construction to be given to section 9. The section provides in subdivision (b) (B) that a person honorably discharged from military service shall be re-employed and restored by his employer "to such position or to a position of like seniority, status, and pay". Subdivision (c) (1) provides that any person who is restored to a position in accordance with subdivision (b) (B)

"shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence * * *."

The key to the construction of the section is found in subdivision (c) (2) which reads:

"It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

It was the intent of Congress that the returning veteran

> "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

The escalator principle has been reaffirmed in Tilton v. Missouri Pacific R.R., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); Oakley v. Louisville & Nashville R. R., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949); Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328 (1947).

In Borges v. Art Steel Co., 246 F.2d 735 (2d Cir. 1957), the court was concerned with the right of returned veterans to increases in salary granted by a collective bargaining agreement which by its term was applicable only to employees with a specified number of hours of "consecutive working service" immediately preceding the date on which the increase was granted. The agreement defined the consecutive working service as actual service of 1800 hours per year as a minimum calculated on the basis of the employee's straight time hourly earnings. The contract provided that persons on furlough or leave of absence did not accrue consecutive working service. The question before the court was whether the plaintiffs should be regarded as having been on leave of absence, so that they did not meet the standard of "consecutive working service", or whether they should be given equal status with nonveterans who remained continuously on the job.

The court discussed the very problem presented in this case, which is the interpretation of subdivisions (b) (B) and (c) (1). How do you differentiate between "seniority," "status," and "pay" on one hand and "other benefits" on the other? The court was faced with its prior decisions holding that vacation pay benefits awarded to fellow employees while the plaintiff was in military service were not available to the latter. Alvado v. General Motors Corp., 229 F.2d 408 (2d Cir. 1956); Siaskiewicz v. General Elec. Co., 166 F.2d 463 (2d Cir. 1948); Dwyer v. Crosby Co., 167 F.2d 567 (2d Cir. 1948). The rationale of those decisions was that vacation pay did not go to seniority under (b) (B), but to "other benefits" under (c) (1) and therefore practices as to employees on furlough or leave of absence controlled.

The court said,

> "While the problem of construction is difficult, it seems most likely that the expression 'insurance or other benefits' was meant to cover a fairly narrow group of economic advantages whose common quality was that they were miscellaneous fringe benefits not usually regarded as part of 'pay,' 'status,' or 'seniority.'" 246 F.2d at 738.

While vacation pay was held to be of this fringe character, the provision for increase in pay based on actual service of hours per year was held not to be a fringe benefit. The court allowed the inclusion in "actual service of 1800 hours per year" of the time spent in military service.

In Seattle Star v. Randolph, 168 F.2d 274 (9th Cir. 1948), the court was presented with a question of severance pay and found that such pay was a fringe benefit, relying on Dwyer v. Crosby Co., supra, a vacation pay case. In the Seattle Star case the agreement provided that the time spent on leave should not count as service time. The court read this provision in conjunction with subdivision (c) (1), which refers to employees in the armed services as being on leave of absence. The existence of such a provision in the Borges case was not even considered by the court in reaching its determination.

In Hire v. E. I. du Pont de Nemours & Co., 324 F.2d 546 (6th Cir. 1963), the court held that a returning veteran who stepped off the escalator to find that fellow employees of like seniority and status

196

had been laid off, given severance pay and placed upon a recall list, was himself entitled to that severance pay.

 The question of severance pay does not appear to have arisen in this circuit. However, I am of the opinion that the approach by the court in the Borges case and the general purposes underlying the Act call for a ruling here that subdivision (b) (B) is applicable and that in computing severance pay plaintiffs are entitled to include the time spent in the armed forces.

A reading of the congressional history (86 Cong.Rec. 10914 (Aug. 26, 1940)) indicates that the final form of subdivision (c) (1), with its reference to "leave of absence", was not adopted with any intention to curtail the rights of the veteran. It is obvious that there can be many practical situations where (c) (1) literally applied can negative the "escalator" purpose of the Act.

Defendant argues that since the agreement between itself and the union was entered into more than one year after plaintiffs were restored to their employment, the Act has no application to any rights created by the agreement. Section 9(c) of the Act provides that a veteran who is restored to employment pursuant to section 9(b) "shall not be discharged * * * without cause within one year after such restoration." This right is separate and distinct from the right to be restored to employment in a position "of like seniority, status, and pay". If the time limitation against discharge without cause were to be read as a limitation on the other benefits created by the Act, it would nullify its whole purpose, because then the employer and a union could redraw an agreement with impunity after one year from the employee's return from service.

The case of Trailmobile Co. v. Whirls, supra, relied on by defendant, is not to the contrary. There the issue was whether the preferred benefits given by the Act should inure to the veteran after the one-year period had run, so that he would not only be placed on a par with his non-veteran fellow workers, but would be given additional advantages. In that case the action of the employer was sustained because the same harsh treatment was applied without discrimination between veterans and nonveterans of like seniority.

Defendant's motion for summary judgment is denied. Plaintiffs' cross-motion for summary judgment is granted. Settle order.