John H. STEVENS, Plaintiff-Appellant,

v.

TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.

No. 81–5355.

United States Court of Appeals, Sixth Circuit.

Argued May 19, 1982.

Decided July 12, 1983.

Robert S. Olive (argued), McCord & Cockrill, Knoxville, Tenn., for plaintiff-appellant.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas C. Doolan (argued), Tenn. Valley Authority, Knoxville, Tenn., for defendant-appellee.

Before ENGEL, Circuit Judge, BROWN, Senior Circuit Judge and GUY, District Judge.*

ENGEL, Circuit Judge.

The specific issue we address in this appeal is whether any private right of action under the Veteran's Preference Act, as made applicable to United States employees in 5 U.S.C. § 3551,[1] is subject to temporal limitations upon when suit can be brought. The trial judge, relying primarily upon *Er-*

---

* Honorable Ralph B. Guy, Jr., District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. 5 U.S.C. § 3551 provides:

An employee as defined by section 2105 of this title or an individual employed by the government of the District of Columbia, permanent or temporary indefinite, who is or-

dered to active duty or to duty under sections 502–505 of title 32 as a Reserve of the armed forces or member of the National Guard is entitled, on release from duty within the time limits specified in section 9(g) of the Military Selective Service Act of 1967 (50 U.S.C.App. 459(g)), to be restored to the position held by him when ordered to duty. . . .

win v. Neal, 494 F.2d 1351 (6th Cir.1974), held the action to be time-barred by what he perceived to be Tennessee's most nearly analogous state statute of limitations, Tenn. Code Ann. § 28–3–104(a). That statute provides a one-year limitation upon actions "for injuries to the person." [2]

In reversing, we borrow from what we conceive to be the most nearly applicable federal statute, that which provides identical rights to veterans returning to private, state and municipal employment. Because that statute specifically rejects state statutes of limitations, we do likewise and hold that any limitation upon a right to sue is governed by the equitable doctrine of laches. We hold that to apply state statutes of limitation to federal employees while state and private employees are expressly free of them would produce an anomalous result which Congress could not have intended.

Stevens was hired by the TVA in 1976 as a steamfitter. While so employed, he was ordered by the Tennessee Army National Guard to report for full-time training from November 29, 1978 through August 17, 1979. Stevens requested a leave of absence from his employment during this period of military service, but his request for that status was denied and his employee status was later terminated on December 13, 1978 because of his unavailability for work. On August 20, 1979, following completion of active duty service, Stevens made an application for restoration to his employment under 5 U.S.C. § 3551. The TVA refused to reinstate Stevens to his earlier position with his earlier seniority, but it did offer him employment as a "new hire." By letter of September 9, 1979, Stevens was advised that the offer of reemployment would remain open until September 19, 1979. Stevens chose, however, not to accept that offer, indicating that he could accept the position only upon Union referral. While

the merits of Stevens' claim on entitlement to restoration are not before us, the dispute appears to center upon Stevens' status as an employee, and whether that status was entitled to protection under the Veteran's Preference Act as made applicable to United States employees in 5 U.S.C. § 3551.

On September 24, 1979, Stevens filed a petition with the Merits Systems Protection Board (formerly the Civil Service Commission), claiming restoration rights under both 5 U.S.C. § 3551 and 38 U.S.C. § 2024(d) and (f). The latter sections specifically give to National Guardsmen who are called into active duty for training the same reemployment rights enjoyed by other members of the Armed Forces under 38 U.S.C. § 2021. The Merit Systems Protection Board held first that it had no jurisdiction to decide Stevens' claim under 5 U.S.C. § 3551 and, second, that because Stevens was classified as a "temporary" employee of TVA at the time he left for military duty, he was not entitled to restoration under 38 U.S.C. § 2024. See 38 U.S.C. § 2021. The Board denied Stevens' request for reconsideration of its decision on October 24, 1980. Upon appeal to this Court, the Board's decision was reversed on the single ground that the Board applied an incorrect legal standard in deciding whether Stevens was a temporary employee. That case is now on remand to the Board for decision under a correct legal standard. See Stevens v. TVA, 687 F.2d 158 (6th Cir.1982).

On November 26, 1980, one month after the Board's final decision rejecting his administrative appeal, Stevens filed the present action in the United States District Court for the Eastern District of Tennessee upon the theory that 5 U.S.C. § 3551 conferred upon him a private right of action where his rights thereunder were abridged. He asked for reinstatement with full seniority, damages reflecting the difference in

---

**2.** Tenn.Code Ann. § 28–3–104(a) provides:

**Personal tort actions.**—(a) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, criminal conversation, seduction, breach of marriage promise, actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes, and actions for statutory penalties shall be commenced within one (1) year after cause of action accrued.

pay between what he earned in his employment with another employer and what he would have earned at TVA, and consequential damages for various benefits associated with employment at TVA. The TVA moved for judgment on the pleadings, claiming that Stevens' action was time-barred by the one-year limitation provision of Tenn.Code Ann. § 28–3–104 and, further, that Stevens was not entitled to the benefit of section 3551. The district court denied the motion, but after a full trial on the merits it found that suit was in fact time-barred by Tennessee's one-year statute. *Stevens v. Tennessee Valley Authority,* 517 F.Supp. 75 (E.D.Tenn.1981). Having so found, the trial court declined to reach the merits of Stevens' claim. *Id.* at 77.

### I.

■ Stevens' action against TVA in the district court is predicated upon the assumption that 5 U.S.C. § 3551, although silent on the question, creates an implied private cause of action. Ordinarily, the failure of Congress to provide an express provision creating a cause of action under 5 U.S.C. § 3551, while at the same time having specifically provided for those reemployment rights created under 38 U.S.C. §§ 2021 and 2024, would present a difficult question concerning whether Congress intended to create such an action. However, that issue has not been raised here, and we have concluded that we are entitled to consider the issue waived. "The question of whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided" in the absence of objection. *Burks v. Lasker,* 441 U.S. 471, 475–76, 476 n. 5, 99 S.Ct. 1831, 1835–36, 1836 n. 5, 60 L.Ed.2d 404 (1979);

*see Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981); *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir.1981).

### II.

■ After a review of the briefs originally filed in this appeal and after oral argument, we requested submission of additional briefs on whether the proper statute of limitations was to be found at 28 U.S.C. § 2401(a) or (b), which provide a limitation upon when suits "against the United States" may be brought.[3] It appeared after a review of the language of § 2401, especially in light of *Saffron v. Dept. of Navy,* 561 F.2d 938 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), that there might be a federal statute which specifically covered such actions. In such case it would have been inappropriate to consult Tennessee law. As Justice Frankfurter observed:

> If Congress explicitly puts a limit on the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive. The rub comes when Congress is silent.

*Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) citation omitted; *accord, Meeker & Lehigh v. Valley R.R. Co.,* 236 U.S. 412, 423, 35 S.Ct. 328, 332–33, 59 L.Ed. 644 (1915). The period of delay here is apparently 15 months. If 28 U.S.C. § 2401 is applicable, suit was timely under either subsection (a) or (b).

■ We recognize that since the statute of limitation is an affirmative defense, the burden would have normally been upon TVA to assert the proper statute and that, therefore, it would be inappropriate to con-

---

**3.** 28 U.S.C. § 2401 provides:

**Time for commencing action against United States**

(a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

sider a statute upon which no party has relied. At the same time, the issue of the proper statute of limitation was raised in the district court, and the case was decided on that issue. We agree with the District of Columbia Circuit it would be improper to ignore altogether a limitation if Congress has distinctly made it applicable. Thus, as did the district court in *Saffron,* we notice *sua sponte* the potential application of the statute. For the reasons which follow, however, we are satisfied that 28 U.S.C. § 2401(a) and (b) have no applicability to any actions brought in the district court against the TVA under 5 U.S.C. § 3551.

As the TVA points out in its brief, section 2401 was originally enacted in 1948 as a part of the codification of the judicial code entitled 28 U.S.C., and it combined two separate and pre-existing limitations for suits against the United States as an entity. Subsection 2401(b) was originally enacted in 1946 as section 420 of the Federal Tort Claims Act, 60 Stat. 845 ("F.T.C.A."). Section 421 of the F.T.C.A. provides that the act shall not apply to "any claim arising from the activities of the Tennessee Valley Authority", and further holds that the limitations sections apply only to "claim[s] against the United States cognizable under this title." In like manner, section 2401(a) is inapplicable to suits against the TVA. Although appearing to be general in its language, section 2401 derives from the provisions of the Tucker Act, which provides a comprehensive system for commencement of actions against the United States as an entity. The Tucker Act also specifically exempts the TVA from its operation, 28 U.S.C. § 1491 (1976); Supp. 5 (1948); *Jackson v. Tennessee Valley Authority,* 462 F.Supp. 45, 54 (M.D.Tenn.1978), aff'd, 595 F.2d 1120 (6th Cir.1979).

The Tucker Act exemption provision is expressly addressed to actions brought in the Court of Claims but not to those brought in district court. *See* 28 U.S.C. § 1491 (1976). The TVA argues, however, that it is applicable in the present case. The Tucker Act, as carefully analyzed in *Saffron, supra,* was designed by Congress to provide a vehicle for making claims against the United States by creating general jurisdiction to hear such claims in the United States Court of Claims while providing concurrent jurisdiction over claims of $10,000 or less in the United States District Courts. 28 U.S.C. § 1346(a)(2). As the jurisdiction of both courts in the reach of their authority under the Act is otherwise the same, the TVA asserts that the exemption applies with equal force to actions brought in the district courts.

It is at first difficult to understand why the TVA would not be subject to the more general provisions of section 2401 since they do not seem specifically so limited. The answer is, we believe, found in the nature of the Tennessee Valley Authority as that entity is organized by statute. While each party cites authorities to the effect that the TVA is in fact a governmental entity, the truth is that it is somewhat of a statutory hybrid, deliberately made so by the Congress, which intended to tailor its status to its needs as Congress perceived them. The act creating the TVA divides the functions and powers of the TVA into those which are specifically proprietary in nature and those which are acts which can be performed by the TVA on behalf of the United States, 16 U.S.C. § 831c. Clearly, under section 831c(b), the TVA has power to sue and be sued in its corporate name, and, by implication at least, not in the name of the United States of America. There is a specific provision empowering the TVA to act on behalf of the United States and in the name of the United States, but that provision is confined to certain powers specifically enumerated therein, 16 U.S.C. §§ 831c(h) & (k).[4] The plain implication is that Congress intended that, for ordinary purposes of litigation, suits against the TVA are not suits against the United States. Since the statute in question deals only with suits against the United States, it follows per-

---

4. Those powers relate to the acquisition and conveyance of lands. *See* 16 U.S.C. §§ 831c(h) & (k).

force that the TVA is correct in claiming that section 2401 is inapplicable to it. We find ourselves, therefore, wiser, but back where we started.

## III.

In applying the one-year Tennessee personal injury statute of limitation, the district judge observed:

It is a well-established principle of law, which is not disputed, that if the federal statute upon which the cause of action is based does not provide a statute of limitations, the court must look to the state statute of limitations which in this case is Tennessee, for the statute which is most appropriate. *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–04 [86 S.Ct. 1107, 1111–12, 16 L.Ed.2d 192] (1966); *Warner v. Perrino,* 585 F.2d 171, 174 (6th Cir.1978).

Two separate limitation periods were claimed to govern. Plaintiff claimed that Tenn.Code Ann. § 28–3–105 applied because his cause of action was analogous to that section, which provides:

a civil action based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefore, when no other time of limitation is fixed by the statute creating such liability . . . .

On the other hand, the TVA argued in favor of the previously cited Tenn.Code Ann. § 28–3–104, which provides a one-year limitation for personal tort actions. Between those two cited statutes, the trial judge concluded that the most nearly analogous statute was 28–3–104, relying upon *Erwin v. Neal,* 494 F.2d 1351 (6th Cir.1974).

*Erwin* involved the claims of a nontenured school teacher in Tennessee whose contract was not renewed and who filed suit for reinstatement and damages upon the claim that his termination had been in violation of his civil and constitutional rights. Under such circumstances, the court treated the right of action as one basically for "injuries to the person" and, thus, subject to the one-year limitation of Section 23–3–104.

Finding the facts in *Erwin* indistinguishable in any practical sense from those at hand, the trial judge applied the one-year statute and dismissed the complaint.

While the position taken by the learned trial judge is indeed plausible, review of applicable authorities convinces us that it would be error to seek to apply the most nearly analogous state statute to any actions brought or created under section 3551. *Occidental Life Insurance Company v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), is particularly relevant to the question presented here.

*Occidental* was a Title VII action in which the Supreme Court created an exception to the general rule that federal courts must apply analogous state statutes of limitations to actions under federal statutes which do not specify their own limitation periods. The district court applied a California one-year statute of limitations to the action, but the EEOC claimed that such application unduly interfered with the statutory scheme of Title VII, which required the EEOC to engage in a process of conciliation and negotiation before any suit could be filed. In *Occidental,* suit was not filed within the one-year period because the EEOC conciliation efforts were not completed by then. While the Supreme Court simply could have held that the one-year statute of limitations was tolled pending the completion of EEOC conciliation efforts, it chose instead to create a potentially broad exception to the former rule of applying state statutes of limitation:

When Congress has created a cause of action and has not specified the period of time within which it may be asserted, the Court has frequently inferred that Congress intended that a local time limitation should apply. *E.g., Runyon v. McCrary,* 427 U.S. 160, 179–182 [96 S.Ct. 2586, 2598–2600, 49 L.Ed.2d 415] (Civil Rights Act of 1866); *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696 [86 S.Ct. 1107, 16 L.Ed.2d 192] (§ 301 of the Labor Management Relations Act); *O'Sullivan v. Felix,* 233 U.S. 318 [34 S.Ct. 596, 58 L.Ed. 980] (Civil Rights Act of 1871);

*Chattanooga Foundry & Pipe Works v. Atlanta,* 203 U.S. 390 [27 S.Ct. 65, 51 L.Ed. 241] (Sherman Antitrust Act); *Campbell v. Haverhill,* 155 U.S. 610, [15 S.Ct. 127, 39 L.Ed. 280] (Patent Act). This 'implied absorption of State statutes of limitation within the interstices of . . . federal enactments is a phase of fashioning remedial detail where Congress has not spoken but left matters for judicial determination.' *Holmberg v. Armbrecht,* 327 U.S. 392, 395 [66 S.Ct. 582, 584, 90 L.Ed. 743].

But the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and *it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies.* "Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide." *Johnson v. Railway Express Agency,* 421 U.S. 454, 465 [95 S.Ct. 1716, 1722, 44 L.Ed.2d 295]. *State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute.* Ibid.; *Auto Workers v. Hoosier Cardinal Corp., supra* [383 U.S.], at 701 [86 S.Ct. at 1110–1111]; *Board of County Comm'rs v. United States,* 308 U.S. 343, 352 [60 S.Ct. 285, 289, 84 L.Ed. 313].

*Occidental Life Insurance Company v. EEOC, supra,* 432 U.S. at 367, 97 S.Ct. at 2455 (emphasis added).

Three considerations persuade us that we should follow *Occidental* and hold that no state statute of limitation applies and that therefore the limitation upon the right of action in such actions as this is governed by the equitable doctrine of laches.

First, the statute under which this suit is brought, section 3551, applies exclusively to employees of government agencies and to no one else.[5] It does not have the type of general application which might make it desirable to meld national law to local law to accommodate various local notions of timeliness. There is no good reason why a national law applied only to national agencies and for the benefit of its employees should be differently construed for the employees of the same authority merely by virtue of their physical location in one state as contrasted to another.

Second, analogous federal law may also be considered when searching for a nearly analogous law. Of course, Congress' historic reticence to provide its own statute of limitations for causes of action created by it usually frustrates any frequent application of such a method. When the rule requiring application of the most nearly analogous state statute developed, it was altogether likely that the only analogous cases were to be found in state law and that, for want of a better source, state law accorded a reasonable basis for limiting actions where the federal statute was silent. We can discern no affirmative reason to ignore the Congressional intent as expressed in another federal statute if in fact that statute is most nearly analogous to the one under scrutiny and there is no clear indication of

**5.** There can be no doubt that the TVA is an agency of the United States. The TVA was described by our court in 1944:

The Tennessee Valley Authority exercises an executive or administrative function in its activities, which, prior to its establishment, rested with the divisions of the executive branch of the Government. (citation omitted) Its great functions are governmental in nature, and might have been performed directly by officers of the Government. It is plainly a governmental agency or instrumentality of the United States. (citation omitted). . . . (T)he Tennessee Valley Authority,

as a governmentality, is free from a state's regulation or control and subject to suit only as permitted by the federal statute creating it.

*Tennessee Valley Authority v. Kinzer,* 142 F.2d 833, 837 (6th Cir.1944).

While we have shown that Congress intended the TVA sue or be sued as a corporation, it is clear that this characteristic is due to Congressional intent regarding the operation of a governmental instrumentality; the status of the TVA as a governmental unit has been carefully maintained by the Congress.

intent to the contrary. So viewed it is then obvious that the nearly analogous statute is that which provides for the protection of veterans' benefits accorded to persons other than those in federal employ. That statute is 38 U.S.C. § 2022.

Congress first established veterans' reemployment rights in the Selective Training & Service Act of 1940, Pub.L. No. 76–783, 54 Stat. 885 (Sept. 16, 1940). Section 8 of the 1940 Act specifically provided a private cause of action by servicemen to enforce the reemployment provisions of the Act, but made no reference to any statute of limitations. 50 U.S.C.App. § 308(e) (1946). The Act was reenacted in 1942, 1944, and 1946, finally expiring in March 1947. See 50 U.S.C.App. at p. 7503 (1952). The Act was replaced by the Selective Service Act of 1948, Pub.L. No. 80–759, 62 Stat. 604 (June 24, 1948), section 9 of which reenacted in substantially identical form the reemployment rights earlier granted in the 1940 Act. Section 9(d) of the 1948 Act carried forward the veteran's right of action in federal court against private employers and was itself codified at 50 U.S.C.App. § 459(d). In 1974 the section authorizing suit was amended and recodified and now appears at 38 U.S.C. § 2022. See generally Vietnam Era Veteran's Readjustment Assistance Act of 1974, § 404(a), Pub.L. No. 93–508, 88 Stat. 1578, 1596 (Dec. 3, 1974).

Before the 1974 Act was passed, it was the practice generally for federal courts in considering any temporal limitations upon the right of actions created to enforce veterans' reemployment rights to categorize claims for backpay and money damages by veterans as legal claims and apply thereto the most nearly analogous state statute of limitations. At the same time, courts classified claims for reinstatement and seniority as equitable and subject only to the defense of laches. See Gruca v. U.S. Steel Corp., 495 F.2d 1252, 1257 (3rd Cir.1974); Bell v. Aerodex, Inc., 473 F.2d 869, 872 (5th Cir.1973) (dictum) and cases cited therein;

Delman v. Federal Products Corp., 251 F.2d 123, 126, 127 (1st Cir.1958); Armstrong v. Baker, 394 F.Supp. 1380, 1384–85 (N.D.W. Va.1974); Hicks v. U.S. Radiator Co., 127 F.Supp. 429, 430 (E.D.Mich.1955); Walsh v. Chicago Bridge & Iron Co., 90 F.Supp. 322, 326 (N.D.Ill.1949).[6]

Not all federal courts have agreed with the distinction between claims for reinstatements and claims for backpay. At one extreme the Second Circuit characterized all claims for relief as equitable and thus not subject to state statutes of limitation under the 1940 and 1948 Acts. Ufland v. Buffalo Courier Express, Inc., 394 F.Supp. 199, (W.D.N.Y.1974). On the other hand, a Fifth Circuit case explicitly rejected the equity/law distinction to hold that an Alabama statute of limitations applied under the 1948 Act whether the relief sought was equitable or legal or both. Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815, 819 (5th Cir.1972).

In 1974 the 1948 Act, as codified and reenacted from time to time, was recodified as 38 U.S.C. § 2021 et seq. It was amended in two particulars which are significant here. For the first time section 2022 permitted suits by veterans against not only private employers but also state and local governments. Also, there was added to section 2022 the following language: "no state statute of limitations shall apply to any proceedings under this chapter." 38 U.S.C. § 2022 (1979).

It is therefore seen that, in explicitly providing that state statutes of limitations were not to apply to veterans' reemployment actions, Congress overruled all of the preceding cases which applied state statutes to legal or equitable claims by veterans under the preexisting Act, including among those cases one relied upon by the district judge here. Hire v. E.I. DuPont v. DeNemours & Co., 324 F.2d 546, 549 (6th Cir.1963) (applying the Tennessee statute to a veter-

---

**6.** Two cases arising in the Sixth Circuit make no mention of the distinction between legal and equitable issues, although they do involve claims for monetary relief only. See Hire v.

E.I. DeNemours & Co., 324 F.2d 546, 549 (6th Cir.1963) (severance pay); Marshall v. Chrysler Corp., 378 F.Supp. 94, 96 (E.D.Mich.1974) (damages).

an's claim for severance pay based upon the forerunner of the present section).

The legislative history accompanying the amendments makes it clear that Congress specifically intended to overrule cases like *Blair v. Page Aircraft, supra; Bell v. Aerodex, Inc., supra,* and *Gruca v. U.S. Steel Corp., supra,* as inconsistent with the original intent of Congress; that Congress did not intend that state statutes of limitations should apply to reemployment actions but that they should be subject only to the doctrine of laches; and that this was true whether historically the particular remedy sought was legal or equitable. *See* S.Rep. No. 907, 93d Cong., 2nd Sess. 111 (1974), *reprinted in* 120 Cong.Rec. 2022 (1974).

Federal courts have uniformly held section 2022 to be retroactive, and have applied it to cases commenced before the date of the amendment, *see e.g., Hirschberg v. Braniff Airways, Inc.,* 404 F.Supp. 869, 873–74 (E.D.N.Y.1975); *Letson v. Liberty Mutual Ins. Co.,* 523 F.Supp. 1221, 1224 (N.D.Ga. 1981) and cases cited therein. One of the principle reasons given for retroactive application relied upon in *Hirschberg, supra,* was that the legislative history of the 1974 amendment indicated that Congress had merely clarified its original intent; it had not in any way considered that the amendments were a departure from existing laws:

> The Senate Report says unmistakably that the amendment "reaffirms and reflects more clearly" the original intent of Congress; in other words that its purpose was to clarify the law.

404 F.Supp. at 872.

If, therefore, by its 1974 amendments to the veteran's reemployment actions against private employers and against state and local government employers, the Congress clearly intended that state statute of limitations not be applied, it would be at the very least incongruous to hold that state statute of limitations should be applied to limit a federal employee's actions in a federal court against a federal agency and specifically asserting a federally-created statutory right when similar actions by employees of private employers are not so limited. It is true, of course, that in 1974 Congress did not also amend 5 U.S.C. § 3551 and that it clearly could have done so had it wished to make the amendment applicable to that section of the law. While normally we would be inclined to believe that the omission was as significant with respect to section 3551 as was its inclusion with respect to section 2022, on further reflection we conclude to the contrary. The short and proper answer, we believe, is that Congress did not think to amend section 3551 because to that time no court had thought to apply any state statute of limitations to actions brought under that section. In other words, since it did not appear that this particular section had ever been misconstrued, there seemed no particular reason to apply any corrective legislative therapy to it.

■ A third reason that *Occidental* is relevant here is that, although we recognize Congress has not specifically created a cause of action on the part of the government employee under section 3551 as it did in section 2022, it is nonetheless true that if there is such a cause of action, the borrowing of any state limitation period would be inconsistent with the underlying policies expressed by Congress with respect to the rights of veterans to reemployment generally. We discern no Congressional notion to impose upon federal employees the restrictions of varying state laws when it has so clearly rejected that concept with respect to those to whom it would more logically be expected to have been willing to apply it.[7]

---

7. Applying a borrowing principle to the most nearly analogous federal statute is especially preferable where an implied cause of action is involved:

> Borrowing an analogous federal limitations period [instead of a state period] is appropriate for some causes of action created by judicial implication. In such claims, one can-

not infer that Congressional creation of an unlimited right of action reveals an intent to conform to the historical practice of borrowing limitations from state laws; in these cases Congress has had no opportunity to consider enacting its own explicit limitation period. *Therefore, courts should not rush to*

We therefore conclude section 2022 is most nearly analogous to the statute at issue and that no state or federal statute of limitations applies to implied causes of action arising under 5 U.S.C. § 3551. Instead, Stevens' claim for relief, whether it normally would be equitable or legal, is governed by the traditional equitable doctrine of laches: "In its traditional equitable form, laches comprises two elements: inexcusable delay by the plaintiff in bringing suit and prejudice to the defendant resulting from that delay." Note, *Limitation Borrowing in Federal Courts*, 77 Mich.L. Rev. 1127, 1141 (1979). As Justice Frankfurter wrote in *Holmberg v. Armbrecht, supra*, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743:

> Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that "laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

### IV.

■ In applying laches many courts, our own included, have held that laches is rebuttably presumed if suit is commenced after the time period specified in the most nearly analogous state or federal statute of limitations, thus shifting the burden to the plaintiff of proving excusable delay and the absence of prejudice to the defendant by the passage of time. *See, e.g., TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 348 (6th Cir.1979); *Greathouse v. Babcock & Wilcox Co., supra*, 381 F.Supp. 156, 163 (N.D.Ohio 1974).

Whatever may be the wisdom of that rule generally, it is in our view one which ought not be applied rigidly here where Congress has so clearly eschewed any reliance on state statutes of limitations with respect to claims of veterans for reemployment. We

*apply the general rule of state limitation borrowing to implied causes of action.*

do not have a comparable or analogous statute of limitations for the simple reason that Congress has said that there shall be none in that cause of action which is most nearly analogous to the one involved here.

In an appeal involving section 2022, the Eighth Circuit specifically refused to apply any presumption of laches based upon an arguably analogous state statute and set out its flexible approach to laches in considerable detail:

> The doctrine of laches is premised upon the same principles that underlie statutes of limitation: the desire to avoid unfairness that can result from the prosecution of stale claims. *Costello v. United States*, 365 U.S. 265, 282–83, 81 S.Ct. 534 [543–44], 5 L.Ed.2d 551 (1961); *Brown v. County of Buena Vista*, 95 U.S. 157, 161, 24 L.Ed. 422 (1877). However, the operation of laches departs from that of statutes of limitation in that laches is more flexible. The Supreme Court has repeatedly emphasized "[t]hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case." *The Key City*, 81 U.S. (14 Wall.) 653, 660, 20 L.Ed. 896 (1871). While courts may benefit from legislative determinations of when delay becomes unreasonable and prejudice may be presumed, undue deference to this judgment may result in a dereliction of the duty to examine all aspects of the equities affecting each case.... Mechanical rules creating presumptions based upon legislative determinations also may divert a court's attention from the real considerations involved in a determination of laches. A court should focus upon the length of the delay, the reasons therefor, how the delay affected the defendant, and the overall fairness of permitting the assertion of the claim.

Note, *Limitation Borrowing in Federal Courts*, 77 Mich.L.Rev. 1127, 1133 (1979) (emphasis added, footnote omitted).

Furthermore, congressional amendment, in 1974, of the statutes dealing with veterans' reemployment rights expressly prohibited the use of statutes of limitations to preclude actions to enforce the reemployment rights. This clarification of congressional intent suggests that Congress did not consider the differing state legislative determinations regarding stale claims to be an appropriate guide for courts confronted with veteran reemployment actions. Application of laches furthers a policy of ensuring that the rights available to returned veterans remain as uniform as possible throughout the country. Over-reliance on state statutes of limitation would detract from this goal. As stated in *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2445, 53 L.Ed.2d 402 (1977): "State legislatures do not devise their limitations period with national interest in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implemention of national policies."

*Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804–06 (8th Cir.1979) (footnotes omitted).

Upon careful consideration we are of the opinion that the advice of the Eighth Circuit in *Goodman* is well taken and in accord with the principles set forth in *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). The activities of the Tennessee Valley Authority extend throughout several states. Each of these states has statutes which might apply to limit or extend the length of time within which suit might be brought. But section 3551 is not, of course, to be applied only to employees of the Tennessee Valley Authority. It applies to federal employees generally throughout the United States. The dilemma in trying, even by analogy, to define laches in terms of state law is therefore made manifestly more difficult and less meaningful. If this is to be the first case in which limitations are to be considered with respect to actions brought under section 3551, we are convinced that it is important

to keep the scope of the statute in mind in order to apply the doctrine properly.

Reversed and remanded for further proceedings consistent herewith.